USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2481 DAVID LALLEMAND, Plaintiff, Appellant, v. UNIVERSITY OF RHODE ISLAND, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Boudin and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ Vincent A. Indeglia with whom Indeglia & McGovern was on brief ____________________ ___________________ for appellant. Thomas M. Elcock with whom David E. Maglio, Stephen P. Harten and _________________ _______________ _________________ Morrison, Mahoney & Miller were on brief for appellees. __________________________ ____________________ November 22, 1993 ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. BOUDIN, Circuit Judge. On Friday evening, October 27, _____________ 1990, Michelle Eckman, a student at the University of Rhode Island, attended a fraternity party at the TKE fraternity. Very early on Saturday morning, Eckman appeared at the university health clinic. She reported that she had been raped at the TKE fraternity around midnight by a "pledge" named "Dan" who was about 6 feet tall with feathered-back blond hair. She said that other men had attempted to assault her. She repeated her charge, in interviews or in writing, during the next several hours. At around 8 a.m. on Saturday morning, October 28, 1990, Lieutenant James McDonald of the university police interviewed Eckman, obtained another description of the rape, and was told by Eckman that her assailant wore a TKE pledge pin. Other officers then obtained separate photographs of all 21 TKE pledges and McDonald brought Eckman to the police station to view the numbered photographs. In the presence of McDonald and another officer, Eckman positively and without hesitation identified David Lallemand as the man who had raped her.1 Based on this photographic identification, ____________________ 1Lallemand is about 6 feet 7 inches tall, considerably above the 6 foot figure first mentioned by Eckman, and he did not have feathered back blond hair. On the other hand, Eckman told McDonald that her assailant was much taller than another police officer, who stood slightly over 6 feet. Eckman also initially said that Dan lived in her dormitory, which is not true of Lallemand, but later indicated that she had merely seen him there. -2- -2- McDonald secured a warrant from a state district court judge and arrested Lallemand on October 30, 1990. On November 3, 1990, Eckman was interviewed once again by McDonald and an officer of the Rhode Island state police. During this interview Eckman said that she remembered Lallemand fondling her when she entered the room where the rape took place; but she said that she no longer could recall the rape itself and could not identify Lallemand as the rapist. Her explanation was that her memory was suppressing the rape. At Lallemand's bail hearing on November 7, 1990, Eckman was unable to identify Lallemand as the man who raped her, and charges against him were dismissed. A grand jury investigated but returned no indictment. Lallemand then filed a civil complaint in the present case charging McDonald, the university and its president and others with violations of 42 U.S.C. 1983. The complaint also made claims under state law but they have not been pursued on this appeal. Although the section 1983 claims went beyond false arrest, that is the only charge that Lallemand has argued in his brief. The essence of the charge is that McDonald conducted an inadequate investigation, ignored exculpatory information, and did not disclose all of the evidence to the state judge who issued the warrant. Following discovery in this case, McDonald and the other defendants moved for summary judgment on the ground that -3- -3- McDonald's conduct was protected by qualified immunity. The magistrate judge recommended that the motion be granted, concluding that at the time of the arrest, McDonald had probable cause to believe that Lallemand had committed the offense. The possibility that McDonald might have done more investigating, said the magistrate judge, did not create liability under section 1983. The district court adopted the report of the magistrate judge and dismissed the case. This appeal followed. On this appeal, our review on the grant of summary judgment is plenary, Hoffman v. Reali, 973 F.2d 980, 984 (1st _______ _____ Cir. 1992), and we assume that genuinely disputed facts and credibility issues would be resolved in appellant's favor. Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1990). ______ _______ Qualified immunity is available if the officer's action was objectively reasonable even if later found to be mistaken. Pierson v. Ray, 386 U.S. 547, 555-57 (1967); Harlow v. _______ ___ ______ Fitzgerald, 457 U.S. 800, 818 (1982). In a false arrest __________ case, the question normally is whether the arresting officer could reasonably believe that the information he or she possessed constituted probable cause. Hunter v. Bryant, 112 ______ ______ S. Ct. 534, 537 (1991). We begin with the objective reasonableness of McDonald's conduct, reserving for the moment Lallemand's alternative argument that McDonald's subjective good faith was an issue -4- -4- for the jury. McDonald's broadest defense on appeal is that he is insulated by the decision of the state judge to issue an arrest warrant. We agree with Lallemand that McDonald's reliance on United States v. Leon, 468 U.S. 897, 928 (1984), _____________ ____ is misplaced. Leon does not provide automatic protection ____ when the warrant itself was issued on the basis of an affidavit claimed to be recklessly false. 468 U.S. at 914. See generally Rodriques v. Furtado, 950 F.2d 805, 812 n.8 ______________ _________ _______ (1st Cir. 1991). Lallemand claims here that McDonald possessed information, undisclosed to the state judge, which negated probable cause. We think it plain that the information disclosed to the state judge, if taken alone, established probable cause. In substance the affidavit set forth Eckman's version of the incident, and followed it with McDonald's description of Eckman selecting Lallemand's photograph from the picture array and positively identifying Lallemand as the man who raped her. Although Eckman said that the perpetrator gave his name as Dan, despite a few discrepancies in description, the affidavit presented facts giving rise to probable cause; everything turns on what McDonald knew at the time but left out of the affidavit. The single most important "fact" allegedly known to McDonald but not disclosed in the affidavit is that other eyewitnesses had identified a different man, Michael Lindell, -5- -5- as the person who--in the words of Lallemand's brief--was "Eckman's attacker" and "the perpetrator." We need not weigh the legal significance of such an omission in the affidavit, because the supposed "fact" is not supported by the record. Rather, Lallemand's brief has misstated the record. What the record indicates is that Michael Brady, the head of the fraternity, told McDonald and other officers that Lindell should be "checked out," in the words of Brady's later handwritten statement. Although the statement does not explain what Brady told the campus police about Lindell, Lallemand's brief offers no record citation to any evidence that anyone identified Lindell as having raped or attempted to rape Eckman. Instead, there are fragments of evidence-- summaries of witness interviews apparently conducted by various police officers--that suggest that Lindell may have pulled off Eckman's clothes and attempted to urinate on her. Taking the interviews at face value, one might conclude that Lindell, Lallemand and possibly others had been taking various liberties with Eckman, who by her own account had had a good deal to drink. It is very hard to tell from the record when each witness interview occurred and how much McDonald knew of these interviews when he filed his arrest- warrant affidavit. But even if he knew everything just recited, nothing Lallemand has pointed to in the record -6- -6- suggests that Lindell was identified by anyone as a rapist. Further Eckman had specifically stated that the rapist wore a TKE pledge pin; Lallemand was a TKE pledge and Lindell was not. Depending on what McDonald knew about Brady's suggestion that the police "check out" Lindell, it might or might not have been good police practice to investigate Lindell further before arresting Lallemand. But given Eckman's positive identification of Lallemand, there was probable cause to arrest him, and there would have been probable cause even if the affidavit had disclosed everything just recounted about Lindell's possible involvement. See generally Krohn v. ______________ _____ United States, 742 F.2d 24, 31 (1st Cir. 1984). What the _____________ witness said about Lindell could easily have been true without casting any doubt on Eckman's identification of Lallemand. It may well be that McDonald ought to have said in the affidavit submitted to the state judge that Eckman had had a lot to drink and was probably drunk that evening (several witnesses, including one friendly to Eckman, so claimed). That a rape victim was drunk does not, of course, remotely excuse the offense; still, the only direct witness was Eckman and her condition bore upon her credibility. Once again full disclosure would not in any way have undercut probable cause. Eckman's identification was positive, and there is no -7- -7- suggestion that she was incoherent or vague when she gave her statements to police or made the photographic identification. See Clay v. Conlee, 815 F.2d 1164, 1168 (8th Cir. 1987). ___ ____ ______ Two further claims in Lallemand's briefs require less discussion. First, contrary to the brief, nothing in the record citations shows that McDonald knew that Eckman was unconscious "during" the rape and so could not have identified anyone; rather, there is some evidence that Eckman might have passed out "sometime" during the assault. With this correction, the passing out admission has virtually no bearing on probable cause. There is nothing remotely implausible about seeing one's attacker and then becoming unconscious. Second, Lallemand's brief makes a considerable point of the fact that McDonald has admitted that he now doubts whether a rape occurred, a doubt based on McDonald's statement that a "rape kit" procedure performed on Eckman came back "negative." "Not withstanding [sic] this known fact," says Lallemand's brief, McDonald "still" filed charges against Lallemand. Lallemand's point is without merit. McDonald's concession came long after the arrest, during a deposition in this case, and there is no indication that he -8- -8- knew of the negative rape kit report when he made the arrest.2 Even less need be said about Lallemand's remaining reasons for his claim that McDonald lacked probable cause or filed an inadequate arrest warrant. The discrepancies concerning the assailant's first name, hair style, dormitory and height are trivial, given their nature and the positive identification of Lallemand by Eckman. Lallemand's argument that McDonald tampered with evidence is not seriously supported. The undisputed facts show not only that McDonald had an objectively reasonable basis for believing that probable cause existed--which is enough for qualified immunity, Hunter, 112 S. Ct. at 536--but also that probable ______ cause actually existed. Lallemand also claims that McDonald acted in subjective bad faith and that this presented a factual issue for the jury. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. at ______ __________ 818, cast great doubt on whether such a claim has a legal basis. See Floyd v. Farrell, 765 F.2d 1, 6 (1st Cir. 1985). ___ _____ _______ In any event, there is here no factual basis for the claim. The main "evidence" of such bad faith is the admission made ____________________ 2On the contrary, it appears that the rape kit samples were submitted for analysis at about the time the arrest was made. This may, or may not, have been poor police procedure; but a rape kit analysis is not a predicate to probable cause where the accuser says that she has been raped and identifies the victim. -9- -9- by McDonald in his deposition that the rape kit results made him question whether anyone had raped Eckman. Since this admission and the knowledge it reflects both came after the arrest, they provide no evidence of bad faith at the only time that matters. This brings us to Lallemand's final argument. It appears that his counsel sought to subpoena police files and grand jury testimony bearing on this case in connection with this civil action. The district judge quashed the subpoenas and entered a protective order. On this appeal, Lallemand asserts that the files and grand jury testimony were crucial to his case--the assertions of need are fairly general--and that the district court erred in not enforcing the subpoenas. We need not pursue the question whether these materials were discoverable under Rhode Island law, a question raising legal issues that Lallemand does not adequately brief. McDonald's brief says that practically all of the police files were turned over during a deposition; that the district court's action limiting discovery was expressly subject to reconsideration based on a more specific showing of need; and that in opposing summary judgment Lallemand did not ask for further discovery or claim that he could not adequately respond because of the quashed subpoenas. Lallemand has not -10- -10- troubled to file a reply brief contesting these assertions. Taking them as conceded, they resolve the matter. The last issue on appeal is the claim of McDonald's counsel that double costs and attorneys' fees should be awarded because the appeal was frivolous, was brought in bad faith and was premised upon a deliberate distortion of the factual record. See 28 U.S.C. 1912, 1927; Fed. R. App. P. 38. In our view, there were just enough loose ends in the investigation to make the appeal legitimate, although very likely to fail. But an appeal can be weak, indeed almost hopeless, without being frivolous, and we think an award of double costs or attorneys' fees is not warranted. In this case, the proper objection is not to the pursuit of the appeal; it is to the various distortions of the record wrought by Lallemand's brief. The worst examples, some repeated twice or more in the brief, have already been mentioned. As is usually the case, these tactics undermine rather than bolster the client's position. The distortions are easily rebutted, and they distract attention from better arguments. And once it is lost, a court's trust in counsel is not readily restored. The judgment is affirmed with ordinary costs taxed to ________ appellant. Appellees' request for double costs and attorneys' fees is denied. ______ -11- -11-