**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

TENISHA WALKER,

  Plaintiff-Appellant,

v.

THE CITY OF OKLAHOMA CITY;
SUSAN PARKER; and KFOR-TV, THE
NEW YORK TIMES, INC.,

  Defendants-Appellees.

Case No. 98-6457

(D. C. No. CIV-97-1648-C)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McWILLIAMS**, and **HENRY**, Circuit Judges.

The plaintiff Tenisha Walker appeals the district court's order granting summary

judgment against her and in favor of the defendants the City of Oklahoma City, Officer

Susan Parker, and  KFOR-TV, a division of the New York Times Company ("KFOR-

TV").  The district court granted summary judgment to Officer Parker and the City of

Oklahoma City on Ms. Walker's 42 U.S.C. § 1983 claim alleging a Fourth Amendment

violation and her state law claims alleging false arrest and malicious prosecution.  It also

---

[*]  This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

granted summary judgment to KFOR-TV on Ms. Walker's defamation claim. For the reasons set forth below, we affirm the district court's decision.

## I. BACKGROUND

Early in the morning of April 30, 1997, Officer Parker, an Oklahoma City police officer, arrested the plaintiff Tenisha Walker ("Ms. Walker"), a Navy Seaman stationed at Tinker Air Force base, for kidnaping, maiming, and assault with a deadly weapon. KFOR-TV, an Oklahoma City television station, reported Ms. Walker's arrest on newscasts at 4:30 p.m., 5:00 p.m., and 6:00 p.m.

Shortly thereafter, Oklahoma City officials discovered that they had arrested the wrong person. They concluded that another woman with a similar name—Tanesha Louise Walker of Wichita, Kansas—was the proper suspect. They released the plaintiff at approximately 10:00 p.m. on April 30, 1997.

The events leading up to Ms. Walker's arrest began shortly after midnight on that day, when the Jones, Oklahoma Police Department received a telephone call from the Oklahoma County Sheriff's Office about a possible crime at a house in Jones. At the designated house, a Jones police officer discovered a young woman with cuts and lacerations on her face, neck, and back. According to the officer, the young woman was upset, crying, and in extreme pain. She told him that she had been kidnaped in Oklahoma City by two people, a woman named Walker who had been a friend of hers in Kansas, and

a man whom she had met three days earlier. The Jones police officer's handwritten field notes list the female suspect's name as "Tanisha Walker," provide a Wichita, Kansas address for this suspect, and state that she is 5'1" tall and 120 pounds. Okla. City Supp. App. at 166.

An ambulance transported the young woman to Midwest City Regional Hospital, where the Jones police officer and an officer from the Choctaw, Oklahoma police department continued to interview her. The officers concluded that the suspected crimes had occurred predominantly in Oklahoma City. They therefore reported the information that they had obtained to the Oklahoma City Police Department.

The Oklahoma City police dispatcher notified Oklahoma City police officers, providing the victim's name and stating that there had been a kidnaping and that Tenisha Walker and a man named "Hunan" or "Durrann," id. at 116, 168, were suspected of having committed the crime. At approximately 1:50 a.m., the dispatcher directed Officer Parker to go to Midwest City Regional Hospital to interview the victim. See id. at 117.

At the hospital, Officer Parker spoke to the young woman, whom she found "very incoherent due to alcohol and pain medication." Id. at 26. A nurse woke her, and Officer Parker began to ask her questions about the kidnaping and stabbing. On several occasions, the woman reported that she could not remember certain events. The nurse told Officer Parker that the memory lapses could have been caused by trauma. According to Officer Parker, the young woman became more alert as she talked, see id. at 114, and

3

she reported that one of her abductors was Tenisha Walker, a woman approximately 5'5'' tall and 115 pounds who lived at Tinker Air Force Base and was wearing a white - shirt with some kind of writing and a pair of shorts. See id. at 26, 128. Officer Parker then proceeded to the base. After interviewing Ms. Walker and consulting with a police lieutenant, Officer Parker arrested her.

During its 4:30 p.m. news program, KFOR-TV reported that the victim had accused Ms. Walker and an unknown male suspect of kidnaping her and stabbing her more than twenty-five times. The report added that Ms. Walker was stationed at Tinker and was recently arrested on prostitution charges in South Oklahoma City. See KFOR-TV Supp. App. at 16.

The information about Ms. Walker's arrest and the purported prostitution charge was obtained by KFOR-TV reporter Anthony Foster, who routinely reviewed daily crime reports in the public information office of the Oklahoma City Police Department. Mr. Foster had read the police department's incident report concerning Ms. Walker's arrest and had spoken with the police department's public information officer about the facts and circumstances surrounding the arrest. The public information officer had advised Mr. Foster of Ms. Walker's current arrest and told him that the young woman and Ms. Walker had been arrested together in south Oklahoma City less than two weeks earlier on charges of offering to engage in lewd acts.

At about 4:45 p.m., a public affairs officer for the Navy spoke to Mr. Foster by

4

telephone and told him that the Navy's research indicated that Ms. Walker had no prior arrests. He explained that Navy personnel had used Ms. Walker's social security number to obtain this information.

On the 5:00 p.m. newscast, Mr. Foster repeated the story of Ms. Walker's arrest, said that she was stationed at Tinker Air Force Base, and stated that Ms. Walker and the victim had been arrested less than two weeks earlier for offering to engage in lewd acts. Mr. Foster added that he had spoken with Navy officials, and that the officials had told him that they did not believe that their Tenisha Walker was the same Tenisha Walker who had been arrested on prostitution charges. On the 6:00 p.m. newscast, Mr. Foster provided a similar report of the crime and Ms. Walker's arrest, adding that "Navy officials say they don't believe Walker is the same woman who was arrested." Id. 71.

On the following day, KFOR-TV reported that Ms. Walker had been released from jail, explaining that Ms. Walker was "not the real suspect" and her arrest was "nothing more than a case of mistaken identity." Id. at 73. The station's newscasts added that, according to the Oklahoma City Police Department, there were actually two Tenisha Walkers, and the Department had arrested the wrong one.

Ms. Walker filed this action against the City of Oklahoma City, Officer Parker, and KFOR-TV. Against the City of Oklahoma City and Officer Parker, she asserted claims for violating her Fourth Amendment rights as well as state law claims for false imprisonment and malicious prosecution. Against KFOR-TV, she asserted claims for

5

defamation, negligence, and negligent infliction of emotional distress. The district court dismissed the negligence and negligent infliction of emotional distress claims as well as all the defamation claims except the one that concerned the report that Ms. Walker had been previously arrested on charges of prostitution. Subsequently, the court granted summary judgment to the defendants on all of the remaining claims.

As to Ms. Walker's claims against Officer Parker, the court reasoned that "[d]espite the fact that the victim was in pain, had received medication, and had ingested alcohol, . . . the [victim's] identification of her attacker . . . was reasonably trustworthy. Thus, at the relevant time there was probable cause to believe Tenisha Walker committed the crimes." Aplt's App. at 79 (Dist. Ct. Order filed Nov. 6, 1998). As a result, the court concluded, Officer Parker's warrantless arrest of Ms. Walker did not violate any of her constitutional or statutory rights.

The court further concluded that existence of probable cause to arrest Ms. Walker established that the City of Oklahoma City was entitled to summary judgment on Ms. Walker's Fourth Amendment claim, as well as on her state law claims for malicious prosecution and false imprisonment. See id. at 79-80.

Finally, with regard to KFOR-TV, the court concluded that the reports of Ms. Walker's arrest were protected under Oklahoma law by the privilege governing reports of official proceedings. The court reasoned that the privilege applied because KFOR-TV's reporter had obtained the information about Ms. Walker from an Oklahoma City Police

Department public information officer.  See id. at 75-77.  In the alternative, the court held that "even if the information is not privileged, negligence has not been established because the undisputed facts show that KFOR[-TV] exercised due care in its gathering and reporting."  Id. at 76-77.

## II.  DISCUSSION

On appeal, Ms. Walker first challenges the district court's conclusion that the victim's identification of her was reasonably trustworthy and that, as a result, there was probable cause to arrest her for the suspected assault and kidnaping.  Alternatively, Ms. Walker argues that there are material issues of fact as to whether probable cause existed.  With regard to her defamation claim against KFOR-TV, Ms. Walker contends that the district court erred in applying the fair report privilege and in concluding that KFOR-TV exercised due care in its news gathering and reporting.

In response, the defendants maintain that the district court's grant of summary judgment to them is supported by the applicable law.  They also argue that the district court's order should be summarily affirmed because Ms. Walker has failed to provide this court with an adequate record on appeal.

We begin our analysis by considering the defendants' arguments concerning the inadequacy of the record.  Then, because we reject the defendant's plea for summary affirmance, we proceed to the merits, reviewing the district court's grant of summary

7

judgment de novo under Fed. R. Civ. P. 56(c). See Butler v. City of Prairie Village, 172

F.3d 736, 745 (10th Cir. 1999).[2]


A. Failure to Provide an Adequate Record on Appeal

Under Tenth Circuit Rule 30.1, an appellant is permitted to file an appendix

containing relevant excerpts of the record. Although this rule excuses the appellant from

providing all the documents filed with the district court, "[t]he appellant must file an

appendix sufficient for considering and deciding the issues on appeal." 10th Cir. R.

30.1(A)(1). When, as here, the appeal is from an order granting summary judgment, the

appellant's appendix must include "relevant portions of affidavits, depositions, and other

supporting documents filed in connection with that motion." 10th Cir. R. 10.3(D)(2); see

also 10th Cir. R. 30.1 (A) (stating that "[t]he requirements of [10th Cir.] Rule 10.3 for the

contents of a record on appeal apply to appellant's appendix."). "The court need not

remedy any failure of counsel to provide an adequate appendix." 10th Cir. R. 30.1(A)(3);

see also McEwen v. City of Norman, 926 F.2d 1539, 1550 (10th Cir. 1991) (holding that

---

[2] Summary judgment is warranted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must construe the record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996). If there are no genuine issues of material fact in dispute, we determine whether the substantive law was correctly applied by the district court. See id.

appellant's failure to designate the relevant record established that he had not met his burden of proving that the district court's findings and rulings were clearly erroneous or an abuse of discretion).

In this appeal, Ms. Walker has filed an appendix that includes only her complaint and her first amended complaint, the defendants' answers to those complaints, the district court's memorandum opinion and final judgment, her notice of appeal, and the district court's docket sheet. Ms. Walker's appendix does not include the evidentiary materials attached to the parties' summary judgment papers. As noted, this court's rules require the appellant to include these evidentiary materials in the appendix. See 10th Cir. R. 10.3(D)(2), 30.1 (A). Moreover, appellate review of the issues raised by Ms. Walker in her appellate brief is not possible unless these materials are considered.

Nevertheless, the defendants have filed supplemental appendices that contain the relevant evidentiary materials filed with the summary judgment papers. In light of the defendants' submissions, the fact that these documents are readily available in the district court file, and the importance of the issues raised by Ms. Walker, we exercise our discretion to proceed to the merits of this appeal. See United States v. Karler, No. 95-6426, 1997 WL 12932, at **1 n.2 (10th Cir. Jan. 15, 1997) (exercising discretion to consider the merits of an appeal in spite of an inadequate appendix because there was no dispute about the content of the missing materials). However, we admonish Ms. Walker's counsel for submission of an incomplete and cursory appendix and advise that the court's

9

indulgence may not be forthcoming in future cases. See Stearns v. Paccar, Inc., No. 91-1423, 1993 WL 17084, at **5 n.3 (10th Cir. Jan. 22, 1993) (admonishing appellant for a similarly inadequate submission).

### B.. Fourth Amendment, Malicious Prosecution, and False Arrest Claims Against the City of Oklahoma City and Officer Parker

In her motion for summary judgment, Officer Parker asserted that she was entitled to qualified immunity from Ms. Walker's claim that she violated the Fourth Amendment by arresting her without probable cause on April 30, 1997. The doctrine of qualified immunity protects public officials performing discretionary functions unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant asserts the defense of qualified immunity, the plaintiff must: (1) establish sufficient facts to show that the defendant violated a federal constitutional or statutory right; and (2) demonstrate that the right in question was clearly established when the defendant acted. See Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998). In this case, the district court based its grant of summary judgment on Ms. Walker's failure to establish the first of these elements: it concluded that because Officer Parker had probable cause to arrest Ms. Walker, Ms. Walker had failed to demonstrate a violation of the Fourth Amendment.

Under the Fourth Amendment, a warrantless arrest is permissible if there is

10

"probable cause to believe that the arrestee committed a crime". Id. at 1256 (citing Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)). "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" Romero, 45 F.3d at 1476 (quoting Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988)). Under the qualified immunity standard, an officer effecting a warrantless arrest is "'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Romero, 45 F.3d at 1476 (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). Law enforcement officials who mistakenly conclude that probable cause exists are still entitled to qualified immunity if their conclusion is reasonable. See id. (citing Hunter, 502 U.S. at 227); see also Glass v. Pfeffer, 657 F.2d 252, 255-56 (10th Cir. 1981) (holding that the defendant police officer's arrest of the wrong person did not violate the Fourth Amendment because the arrest resulted from a case of "reasonable mistaken identity").

Ms. Walker now advances several arguments in support of her contention that a reasonable officer in Officer Parker's position would not have concluded that there was probable cause to arrest her. First, she maintains, the fact that the victim was in pain, had received medication, had ingested alcohol, and was (according to Officer Parker herself) "very incoherent due to alcohol and pain medication," Okla. City Supp. App. at 26,

11

indicates that the victim's identification was not reasonably trustworthy or, at the very least, that there are factual questions about the victim's trustworthiness that render summary judgment inappropriate.

Second, Ms. Walker argues, Officer Parker did not act reasonably because there was easily accessible evidence that would have exonerated her. She mentions the following information: (1) "the detailed and far more accurate description of the assailant given by [the victim] to the Jones City police officer," Aplt's Br. at 19; and (2) information obtained from a records search, which presumably would have revealed a Kansas address for the correct suspect (Tanesha Louise Walker) as well as the fact that Ms. Walker had never been arrested. See id.

Finally, Ms. Walker points to a police report summarizing a telephone interview of the victim by an Oklahoma City police officer on the evening of April 30, 1997. The report states that when the victim was asked if the suspect had anything to do with Tinker Air Force Base, the victim answered, "No." Okla. City Supp. App. at 31. Morever, the report indicates that the officer asked the victim "if she had told the officer at the hospital anything about Tinker AFB and she stated 'No.'" Id.

Ms. Walker's arguments establish that the issue of whether a reasonable officer could have found probable cause is a close one. However, upon review of the record and the applicable law, we agree with the district court that "'a reasonable officer could have believed that probable cause existed to arrest [Ms. Walker].'" See Romero, 45 F.3d at

12

1476 (quoting Hunter, 502 U.S. at 228).

First, with regard to Ms. Walker's contention that the victim was intoxicated, traumatized, and incoherent, we note that Officer Parker testified in her deposition that the victim was "coherent" when she provided a description of the suspects, that, "[a]s she talked more, she became more a little more alert," and that "she would start dozing off again after I pretty much got all the information I needed." Okla. City Supp. App. at 114 (emphasis added). When police officers interview crime victims in order to obtain information about suspects, the victims are often traumatized by what has happened to them. Nevertheless, "law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable." Clay v. Conlee, 815 F. 2d 1164, 1168 (8th Cir. 1987) (collecting cases). Thus, as Officer Parker notes in her appellate brief, statements of traumatized victims, even when they have been drinking, have been held to be sufficient to establish probable cause to arrest the suspects identified by the victims. See, e.g., Lallemand v. University of R. I., 9 F.3d 214, 216 (1st Cir. 1993) (concluding that the fact that a victim had a lot to drink did not undercut probable cause because her identification of the suspect was positive, and there was "no suggestion that she was incoherent or vague when she gave her statements to police"); Clay, 815 F. 2d at 1168 (concluding that although the victim of a rape was intoxicated and appeared "fuzzy-headed" when she first arrived at the hospital, arrest of defendant was supported

13

by probable cause when victim was not "incoherent, irrational, confused, or intoxicated" when she spoke to police officers). This circuit has concluded that, "when examining informant evidence used to support a claim of probable cause for a warrant, or a warrantless arrest, the skepticism and careful scrutiny usually found in cases involving informants . . . is appropriately relaxed if the informant is an identified victim or ordinary citizen witness." Easton v. City of Boulder, 776 F.2d 1441, 1449 (10th Cir. 1987).

Here, according to the evidence before the court, the victim, although traumatized and apparently intoxicated, provided Officer Parker with the name and address of a suspect (Tenisha Walker who lived at Tinker Air Force Base). When she provided that specific information, she was coherent. Thus, the state of the victim does not establish that a reasonable officer could not have concluded that there was probable cause to arrest Ms. Walker.

We are similarly unconvinced by Ms. Walker's argument that Officer Parker did not act reasonably because there was easily accessible evidence that would have exonerated her. Because her argument here is based on an expansive reading of two of our decisions regarding warrantless arrests, Baptiste and Romero, we briefly examine those decisions.

In Baptiste, the plaintiff alleged that she had been arrested for shoplifting without probable cause. In holding that the defendant police officers were not entitled to summary judgment on qualified immunity grounds, we noted that the one of them had

14

viewed a videotape which depicted the alleged crime. We observed that the videotape was insufficient as a matter of law to establish probable cause to arrest the plaintiff and concluded that "police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." Baptiste, 147 F.3d at 1259.

In Romero, we reached a different conclusion, holding that in light of the statements of two witnesses implicating the plaintiff in a murder, a reasonable police officer could have believed that there was probable cause to arrest the plaintiff. We rejected the plaintiff's argument that the a reasonable officer would have investigated alibi witnesses before effecting the arrest. As a result, we concluded that the defendant officer was entitled to qualified immunity. We found no case support for the plaintiff's "broad proposition that a police officer who interviews witnesses and concludes that probable cause exists to arrest violates the Fourth Amendment by failing to investigate the defendant's alleged alibi witnesses." Romero, 45 F.3d at 1476. Instead, we concluded, "the cases state that the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." Id. at 1476-77 (emphasis added).

We disagree with Ms. Walker's contention that there was "readily available" evidence from which a reasonable officer would have concluded that probable cause was

15

lacking. In contrast to <u>Baptiste</u>, there was no videotape of the suspected crime available for Officer Parker's viewing. In contrast to the cases we discussed in <u>Romero</u>, there were no other available witnesses at the crime scene whom Officer Parker could have interviewed in order to obtain information about the suspects.

Moreover, the first evidentiary items on which Ms. Walker relies—the suspect's physical characteristics (5'1'' tall and 120 pounds) and the suspect's Wichita address—are both contained in the Jones police officer's handwritten field notes. <u>See</u> Okla. City Supp. App. at 166. There is no indication in the record that these handwritten notes were available to Officer Parker. Her police report and her deposition testimony both indicate that she was only provided with the name of the victim, the names of the suspects, and a general description of the crime (i.e. that "there's been a kidnapping"). <u>See</u> <u>id.</u> at 26, 116. In light of the information that she had been provided by the police dispatcher and the information provided by the victim, Officer Parker was not required to interview the Jones police officer to determine what the victim had previously said about the suspect.

The other evidence on which Ms. Walker relies—information from a national records search—does not undermine the reasonableness of Officer Parker's decision to arrest her. Although Ms. Walker does not specify precisely what information would have been available through this search, we presume that such a search would have revealed that there was a Tanesha Louise Walker who lived in Wichita, Kansas who had been

16

arrested for prostitution and that Ms. Walker herself had no prior arrests. Even so, the victim's statement to Officer Walker that the woman who assaulted her was the Tenisha Walker who lived at Tinker Air Force base provided reasonable grounds for the arrest.

Ms. Walker's final challenge to the district court's conclusion that Officer Parker acted reasonably is based on a police report's description of an interview with the victim on the evening of April 30, 1997 (conducted not by Officer Parker but by another Oklahoma City police officer). That police report states that when asked in this evening interview if the suspect had anything to do with Tinker Air Force Base, the victim answered, "No." Id. at 31. Moreover, the report indicates, when the officer asked the victim "if she had told the officer at the hospital anything about Tinker AFB[,] . . . she stated 'No.'"Id.

That report raises serious concerns. If the victim never told Officer Parker that Tenisha Walker lived at Tinker Air Force Base, then it is highly questionable whether Officer Parker had probable cause to arrest her. Unfortunately for Ms. Walker, however, the statement in the police report as to what the victim said about her prior statement to Officer Parker is hearsay. See Miller v. Field, 35 F.3d 1088, 1091 (6th Cir. 1994) (concluding that "statements of the victim, the alleged assailants, and various witnesses, . . . contained hearsay information, not facts observed by the preparer of the police report"); United States v. Pazsint, 703 F.2d 420, 424 (9th Cir.1983) ("It is well established that entries in a police report which result from the officer's own observations

17

and knowledge may be admitted but that statements made by third persons under no business duty to report may not.") (citations omitted). Although a nonmoving party need not produce evidence "in a form that would be admissible at trial, . . . the content or substance of the evidence must be admissible." Thomas v. International Business Machs., 48 F.3d 478, 485 (10th Cir.1995) (internal quotation omitted); see also Lancaster v. Independent Sch. Dist. No. 5., 149 F.3d 1228, 1236 (10th Cir. 1998) (refusing to consider plaintiff's hearsay evidence in response to the defendant's summary judgment motion). The record therefore contains no admissible evidence to rebut Officer Parker's sworn testimony that the victim told her that the suspect lived at Tinker Air Force Base.

Accordingly, we conclude that Officer Parker acted reasonably in determining that there was probable cause to arrest Ms. Walker. As the district court noted, that conclusion defeats not only Ms. Walker's Fourth Amendment claims against Officer Parker and the City of Oklahoma City but also her claims for malicious prosecution and false imprisonment. See Aplt's App. at 80 (Dist. Ct. Order filed Nov. 6, 1998, citing Overall v. State ex rel. Dept. of Public Safety, 910 P.2d 1087 (Okla. Ct. App. 1995) and Meyers v. Ideal Basic Indus., Inc., 940 F.2d 1379 (10th Cir. 1991). Thus, the district court properly granted summary judgment to Officer Parker and the City of Oklahoma City.

## C. Defamation Claim Against KFOR-TV

18

Pursuant to the Supreme Court's decision in <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S 323 (1974), individual states may define the appropriate standard of liability of the news media for defamatory falsehoods that injure a private individual. Under Oklahoma law, negligence is the standard of liability. See <u>Martin v. Griffin Television, Inc.</u>, 549 P.2d 85, 92 (Okla.1976). Thus, in reporting news stories about private individuals, the media must exercise ordinary care—that "degree of care which ordinarily prudent persons, engaged in the same kind of business," usually exercise under similar circumstances. <u>Id.</u> A media defendant may be held liable for defaming a private individual if that individual establishes that: (1) the media defendant published a defamatory falsehood concerning the plaintiff; (2) the defendant acted negligently in failing to ascertain that the statement was false; and (3) the plaintiff suffered damages as a result of the falsehood. See <u>Colbert v. World Publishing Co.</u>, 747 P.2d 286, 288 (Okla. 1987); <u>Anson v. Erlanger Minerals & Metals, Inc.</u>, 702 P.2d 393, 396 (Okla. Ct. App. 1985).

In this case, the district court granted summary judgment to the defendant KFOR-TV on Ms. Walker's defamation claim on the basis of the fair report privilege, a creation of both statutory and common law in Oklahoma. The court concluded in the alternative that the undisputed facts established that KFOR-TV had exercised due care in investigating and reporting the story about Ms. Walker's arrest and that, as a result, the record did not support her allegations of negligence.

The statutory provision regarding the fair report privilege protects

communications made in three circumstances:

> First.  In any legislative or judicial proceeding or any other proceeding authorized by law;
> Second.  In the proper discharge of an official duty;
> Third.  By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers. . . .

Okla. Stat. tit. 12, § 1443.1.

The common law privilege concerns accurate and complete reports of official actions.  It provides:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Wright v. Grove Sun Newspaper Co., 873 P.2d 983, 989 (Okla. 1994) (quoting Restatement (Second) of Torts § 611) (1977).  The common law privilege "is not conditioned upon the truth or falsity of the reported material, the character of the defamed person, nor on the newsworthiness of the event; rather, its applicability is determined by the nature of the occasion at which the republished material was secured for news coverage."  Id. at 989.

In this appeal, Ms. Walker challenges both grounds on which the district court granted summary judgment to KFOR-TV.  She maintains that KFOR-TV's broadcasts are not protected by the fair report privilege and that the district court also erred in

20

concluding that the record did not support her allegations of negligence.

We have some doubt about the district court's application of the fair report privilege. The court appeared to base its conclusion on the fact that the KFOR-TV reporter obtained information about Ms. Walker's purported prior arrest for prostitution from the Oklahoma City Police Department's public information officer. It is not clear from the cases cited by the district court and KFOR-TV that the Oklahoma fair report privilege protects all communications made by police public information officers. Indeed, the Oklahoma Supreme Court's decision in Wright emphasized that the privilege is triggered by specific kinds of "occasion[s]." Id. at 989. In that case, the critical "occasion" was a district attorney's news conference, "a legitimate activity of his office, open to the public and held for the purpose of addressing a matter of general concern to the community." Id. The court stressed that "[c]entral to the [common law] [Restatement] § 611 privilege we adopt today is that the information was garnered at meetings open to the public and not from private conversations between reporters, victims and/or police officers." Id. at 991.

Here, there is no indication that the police department public information officer provided the KFOR-TV reporter with the erroneous information about Ms. Walker's purported prior arrest at such a public meeting. There is thus some question as to the applicability of the common law privilege. As to the statutory privilege, neither KFOR-TV nor the district court have cited authority establishing that a public information

21

officer's providing erroneous information about a suspect's arrest record would constitute a "judicial proceeding" or "the proper discharge of an official duty" under Okla. Stat. tit. 12, § 1443.1.

As to the district court's alternative conclusion— that KFOR-TV was not negligent— Ms. Walker argues that there are controverted issues of fact. She focuses on the affidavit of the Navy public affairs officer, which states that he informed KFOR-TV reporter Foster during a 4:45 p.m. telephone call on April 30, 1997 that a search of social security numbers indicated that Ms. Walker had no previous arrests. See KFOR-TV Supp. App. at 25-26. Ms. Walker contends that, in light of that information, KFOR-TV acted negligently in continuing to report that she had been previously arrested for prostitution.

We are not convinced by Ms. Walker's argument. The record does indicate that, after Mr. Foster received the 4:45 p.m. telephone call from the Navy official, KFOR-TV continued to report in its 5:00 p.m. and 6:00 p.m. broadcasts that Ms. Walker had been previously arrested for prostitution. However, the station also reported in these broadcasts that Navy officials did not believe that Ms. Walker had been previously arrested. KFOR-TV's broadcasts thus reflected the conflicting information that it had received–a statement from the Oklahoma City Police Department's public information officer that Ms. Walker had been previously arrested and a statement by the Navy official that their research indicated that she had not been previously arrested. As KFOR-TV

22

notes, Ms. Walker failed to offer any evidence in her summary judgment papers indicating that KFOR-TV's reliance on the public information officers' statements in these circumstances constituted negligence. See generally Malson v. Palmer Broadcasting Group, 936 P.2d 940, 942 (Okla. 1997) (noting that the Restatement (Second) of Torts § 580B, cmt. g, provides that "in defamation cases involving private individuals, evidence of customs and practices within the news profession, which may be relevant in determining whether ordinary care was practiced in a given situation, will normally come from an expert").

Accordingly, we conclude that the district court properly granted summary judgment to the defendant KFOR-TV on Ms. Walker's defamation claim.

### III. CONCLUSION

We note with sadness the result in this entire matter. It seems quite factually unlikely that the victim provided Officer Parker with the information that her attacker lived at Tinker Air Force base, and that unlikely fact has proven dispositive in this appeal. In order to minimize the possibilities of such an arrest in the future, an investigation and evaluation of the City's procedures may be warranted.

As to KFOR-TV, the question of whether journalistic ethics further compelled more evaluation of the Navy's position based upon KFOR-TV's investigation of social security numbers before the station broadcasted information that could injure an innocent

party is likewise not before us, and must be left to the company's policymakers.

We regret that Ms. Walker was arrested and subjected to this mistake. However, her claims as argued and preserved do not rise to violations of federal or state law. For the reasons set forth above, we therefore AFFIRM the district court's decision granting summary judgment to the City of Oklahoma City, Officer Parker, and KFOR-TV on all of Ms. Walker's claims.


Entered for the Court,


Robert H. Henry
United States Circuit Judge