GARTH, Circuit Judge,
concurring:
I agree that the District Court’s decision granting summary judgment to the defendants must be affirmed.[1] I write separately, however, because I take issue with the majority opinion’s equivocal “probable cause” analysis as it relates to eyewitness identification. See Majority Op., Part IIB.
Despite recognizing the argument “that a positive identification by a victim is sufficient by itself to establish probable cause that the identified party was the offender,” id. at 790, the majority opinion insists upon adopting a “weighing” principle that forces us to weigh “exculpatory” facts against “inculpatory” facts. See id. at 791-92. By doing so, the majority has misinterpreted and placed much emphasis on the reliability factor that the Supreme Court has held to be a necessary part of our Fourth Amendment analysis, see Illinois v. Gates, 462 U.S. 218, 280, 103 S.Ct. 2317, 76 L.Ed.2d 627 (1983).
In probable cause analysis, it is the reliability of the witness (or victim) who has provided an identification of the assailant that is the focal point of the inquiry. It is not the reliability of the evidence provided in tandem with that individual’s identification, which may be inconsistent with such an identification. As a result, the majority confuses a lack of reliability in an eyewitness with evidence that, at most, tends to exculpate the identified individual of wrongdoing and therefore simply is inconsistent with the victim’s identification. Inconsistent or contradictory evidence may cut against a putative defendant’s guilt at trial, but it cannot render invalid — i.e., eliminate the probable cause necessary to obtain an arrest warrant — a positive identification by an eyewitness who either a police, officer or magistrate deemed to be reliable.
Reliability in this context obviously means an eyewitness who is neither mentally impaired or delusional. See Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988) (stating that as long as the identifying victim eyewitness is “lucid,” probable cause exists to arrest the identified individual). For instance, if the victim eyewitness were to show signs of insanity or other forms of mental instability, the reliability of that eyewitness would, in my view, justifiably be called into question. Statements during the'identification process such as “That’s the assailant! I’d know Abe Lincoln anywhere!” or “I believe that this is the thief, because he had three heads!” would signal such reliability concerns. Thus, it is the witness’s reliability that is at the core of our probable cause determination, not the reliability of the individual’s identification, as required by the majority opinion’s formula, which weighs exculpatory against inculpatory evidence. Majority Op., at 791-92. Accord: ingly, I part company with the majority opinion at the point where the majority seeks to distort the probable cause analysis to the point of virtually requiring trial-type proof at the very threshold stage of criminal investigation.[2]
*794 My thesis is simple and in accord with the prevailing jurisprudence. Once law enforcement officers have obtained a positive identification from a reliable witness, then, without more, probable cause exists to justify the arrest of the identified individual. As the Seventh Circuit has stated, “once a putative victim ... has positively identified her attacker to the police and they have no reason to disbelieve her, the officers ‘need not take any additional steps to corroborate the information regarding the crime before taking action.’” Tangwall v. Stuckey, 135 F.3d 510, 516 (7th Cir.1998) (quoting United States v. Decoteau, 932 F.2d 1205, 1207 (7th Cir.1991)); see also Jones, 856 F.2d at 994.
Decisions from both this circuit and our sister circuits validate my interpretation of this interplay between the Fourth Amendment’s probable cause requirement and victim eyewitness identifications, especially as they impact on the facts presented in this case. See Sharrar v. Felsing, 128 F.3d 810 (3d Cir.1997); Tangwall v. Stuckey, 135 F.3d 510 (7th Cir.1998); Lallemand v. University of Rhode Island, 9 F.3d 214 (1st Cir.1993); Greene v. City of Philadelphia, No. CIV. A. 97-4264, 1998 WL 254062 (E.D.Pa. May 8, 1998).
Specifically, in Sharrar v. Felsing, 128 F.3d 810 (3d Cir.1997), a woman telephoned 911 to report that she had been assaulted. See id. at 814. When the 911 operator asked the woman to identify the individual who had committed the assault, she immediately responded with the name Robert Carroll. See id. Once the police arrived, however, the woman had altered her story, and now alleged that her husband — David Brigden — was the assailant. See id. The police arrested Brigden, but after all charges against him had been dismissed, Bridgen brought a section 1983 action against the police, alleging that they lacked the probable cause to arrest him. See id. at 816-17. In particular, Brigden argued that his wife’s earlier identification of Carroll as her attacker so impaired her reliability as to abrogate any finding of probable cause. See id. at 818.
We soundly rejected this argument, holding that law enforcement officers (or, presumably, a magistrate) need not carefully scrutinize an identification or other information provided by a victim of an alleged offense as they would with other informants. See id. at 818 (quoting Easton v. City of Boulder, 776 F.2d 1441, 1449 (10th Cir.1985)). Most importantly, however, the Sharrar panel held that “[w]hen a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause.” Id. (citing Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir.1991); Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir.1991)); see also Greene v. City of Philadelphia, No. CIV. A. 97-4264, 1998 WL 254062, at *7 (E.D.Pa. May 8, 1998) (“The principle that probable cause may be based on a single and reasonably reliable eyewitness identification, even though the identification may be tarnished by discrepancies in the witnesses’ description of the perpetrator, is well-established.”). By affirming the district court’s finding of probable cause to arrest Bridgen, the panel in Sharrar implicitly stated that a victim’s proffer of two different identifications for his or her attacker by name does not undermine the eyewitness’s reliability enough to eliminate probable cause to arrest. Any reading of the Sharrar opinion has to lead to the conclusion that it is the reliability of the eyewitness that is relevant and essential to the probable cause analysis, not the weighing process through which the majority attempts to modify our jurisprudence.[3]
*795 Sharrar’s application to the present matter is striking. Within a matter of hours, the alleged victim in Sharrar provided the police with two different names for her assailant. Even in the face of this blatant inconsistency, the Sharrar court— our court — held that the purported victim’s positive identification was sufficient to give rise to probable cause.
To the contrary, the inconsistencies presented here are much less extreme. The only evidence that arguably can be considered inconsistent with Braverman’s photo identification of Wilson was her earlier description of the assailant’s height and Druce’s inability to identify the assailant when presented with the same photo array. Merely providing a height range that is inconsistent with that of the individual identified does much less to question an eyewitness’ reliability than does providing two different names of two different individuals within a span- of hours. As such, any reading of our decision in Sharrar — to which this panel is, of course, bound— must lead to the conclusion that Braver-man’s identification of Wilson, mthout more, was sufficient to give rise to probable cause.
Even more persuasive, and nearly identical on a factual level, however, is Lallemand v. University of Rhode Island, 9 F.3d 214 (1st Cir.1993). In Lallemand, a university student alleged that she had been raped, and during a medical exam, stated that her assailant was a fraternity pledge named “Dan,” who was around six feet tall with blond hair. See id. at 214-15. During the ensuing police investigation, law enforcement officers showed the student photographs of each of the pledges from the fraternity at which the student claimed to have been assaulted. See id. at 215. Faced with these photos, the student “positively and without hesitation” identified, as her assailant, an individual named “David,” who stood 6’7”, and did not have blond hair. Id. at 215 & n. 1. Notwithstanding these discrepancies, the First Circuit held that probable cause existed for “David’s” arrest. See id. at 216-17. Indeed, the Lallemand court went so far as to state that “[t]he discrepancies concerning the assailant’s first name, hair style, dormitory and height are trivial, given their nature and the positive identification.” Id. at 217 (emphasis added); see also Tangwall, 135 F.3d at 516 (“The identification itself establishes probable cause to make an arrest, even where other witnesses’ descriptions of the alleged perpetrator differ from the physical appearance of the individual so identified.”).
Given the factual similarities presented between Lallemand and the instant matter, and our own court’s acceptance — in Sharrar — of the constitutional premise underlying the First Circuit’s persuasive holding in Lallemand, the equivocal and therefore improper and erroneous nature of the majority’s probable cause analysis becomes clear.
In all other respects, however, I concur in the majority’s analysis and its ultimate result.

. I further agree that because the District Court failed to address Wilson’s state law claims, a remand is appropriate for this limited purpose.

. As the Supreme Court has stated, the standard for "probable cause does not demand the certainty we associate with formal trials.” *794 Illinois v. Gates, 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

. The majority cites the Eighth Circuit’s opinion in Kuehl v. Burtis, 173 F.3d 646 (8th Cir.1999), as support for this weighing process. The facts in Kuehl, however, do not concern eyewitness identification, and as such, render Kuehl completely inapplicable to the issue of the sufficiency of an eyewitness *795 identification — the probable cause determination presented in the instant case.