**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SYLVIA E. BAPTISTE, an individual,

     Plaintiff-Appellee,

v.

J. C. PENNEY COMPANY, INC., a
Colorado corporation; GARY
BROWN, KENNETH GURULE, and
MELANIE HEIMANN, in their
individual capacities,

     Defendants,

     and

MARVIN HERNHOLM and
CASSANDRA MARTIN, in their
individual capacities,

     Defendants-Appellants.

No. 97-1047

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 94-D-721)**

---

Thomas J. Marrese, (James G. Colvin, II, with him on the brief), Office of the
City Attorney, City of Colorado Springs, Colorado Springs, Colorado, for
Defendants-Appellants.

Luis A. Corchado, Denver, Colorado, (Monte Lynn Scaggs, Colorado Springs, Colorado, with him in the brief) for Plaintiff-Appellee.

---

Before **ANDERSON,  LOGAN,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Sylvia E. Baptiste filed a civil rights suit under 42 U.S.C. § 1983 against Colorado Springs Police Officers Marvin Hernholm and Cassandra Martin, claiming they violated under color of state law her right to be free from unreasonable searches and seizures.[1]  Officers Hernholm and Martin filed a motion for summary judgment based on qualified immunity; the motion was denied by the district court.  Officers Hernholm and Martin appeal the district court's denial of summary judgment, arguing that established law allowed them to rely on allegations made by store security guards to establish probable cause to arrest and conduct a pat-down search, despite the officers having viewed a videotape of the very conduct which served as the basis for the guards' allegations.  Additionally, Officer Martin argues she is entitled to qualified immunity because she relied on her fellow officer's determination that probable

---

[1]Ms. Baptiste also raised a pendant state claim under the Colorado Constitution.

cause existed to conduct a pat-down search. This court affirms the district court's denial of qualified immunity.

## BACKGROUND

This suit arises out of an incident in which Ms. Baptiste was accused of shoplifting by J.C. Penney employees. Ms. Baptiste originally filed a lawsuit against J.C. Penney, three J.C. Penney employees, and the City of Colorado Springs. She later filed a separate 42 U.S.C. § 1983 suit against Colorado Springs Police Officers Marvin Hernholm and Cassandra Martin. The two suits were subsequently consolidated and Officers Hernholm and Martin moved for summary judgment based on qualified immunity. The two officers appeal the district court's denial of that motion for summary judgment.

Taken in the light most favorable to Plaintiff Baptiste, the evidence establishes the following facts. Ms. Baptiste, an African American woman, was shopping at a J.C. Penney store and purchased a sterling silver ring. Upon exiting the store, Ms. Baptiste was stopped by J.C. Penney security guards and asked to return to the store. The security guards, who had been watching Ms. Baptiste on a store monitor, believed Ms. Baptiste had stolen a ring. The guards escorted Ms. Baptiste to a basement office, where they detained and interrogated her. She emptied the contents of the bag she was carrying and produced receipts for the

items she had purchased; the guards did not find a stolen ring. The Colorado Springs Police Department was called for assistance.

Officer Marvin Hernholm from the Colorado Springs Police Department responded to the guards' request for assistance. Upon arriving, Officer Hernholm spoke with the security guards and viewed the security videotape which served as the basis for the security guards' allegations.[2] The videotape, which is part of the record on appeal, shows Ms. Baptiste standing at a jewelry counter; reaching into her shopping bag; pulling out a ring; placing this ring on her middle finger; trying various J.C. Penney rings on her finger; and comparing the J.C. Penney rings to the ring from her bag. The videotape then shows Ms. Baptiste returning one ring to her bag and, with a second ring in her hand, looking for a sales person. There is then a gap in the recording before the videotape shows Ms. Baptiste making a purchase.[3]

After viewing the videotape and speaking with the guards, Officer Hernholm questioned Ms. Baptiste, searched her bag and purse, and had her

---

[2]The security guards told Officer Hernholm that the videotape showed Ms. Baptiste shoplifting and that a price tag from a ring had been found near a counter where Ms. Baptiste had been.

[3]Ms. Baptiste alleges that the security videotape produced by J.C. Penney has been altered to eliminate two minutes from the tape. According to Ms. Baptiste, Officer Hernholm viewed an unedited version. The facts recited in this opinion describes the content of the allegedly edited videotape which is part of the record on appeal. Ms. Baptiste believes the deleted portion of the videotape would show her handing a J.C. Penney ring to a cashier for purchase.

empty her pockets. Ms. Baptiste explained that she had purchased a ring at Mervyn's and that the Mervyn's ring must be the one she was suspected of stealing. She produced the Mervyn's ring and a receipt for the ring, as well as the J.C. Penney ring and receipt. Officer Hernholm then summoned a female officer, Officer Martin, to conduct a pat-down search. When Officer Martin arrived, Officer Hernholm advised her that he was investigating a shoplift and needed her to conduct a pat-down search. Officer Martin viewed at least a portion of the security videotape and then conducted the pat-down search of Ms. Baptiste, finding nothing.[4] Ms. Baptiste was then informed she was free to leave.

## QUALIFIED IMMUNITY

Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997) (quoting *Harlow*). This court reviews the denial of qualified immunity on summary judgment *de novo*.[5] *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.

_____

[4]There is a factual dispute whether Ms. Baptiste consented to the pat-down search.

[5]This court has jurisdiction to review a district court order denying a defendant's motion for summary judgment based on qualified immunity to the extent the order resolves abstract issues of law. *See Clanton v. Cooper*, 129 F.3d

1995). In accordance with the summary judgment standard, evidence is viewed in the light most favorable to the nonmoving party. *See id.*

The framework for analyzing claims of qualified immunity on summary judgment is well settled. Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue.[6] *See Clanton*, 129 F.3d at 1153; *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). "In order to carry [this] burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. Rather, the plaintiff must articulate the clearly

_____

1147, 1152 (10th Cir. 1997). The denial of qualified immunity on summary judgment based on evidence sufficiency, however, is not reviewable as a collateral order. *See id.* at 1152-53. This court may therefore review the district court's determination that "the law allegedly violated by the defendant was clearly established at the time of the challenged actions" as well as the district court determination that "under either party's version of the facts the defendant violated clearly established law." *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997). This court may not, however, review the district court's determination that the evidence could support a particular factual finding. *See Clanton*, 129 F.3d at 1152-53; *Foote*, 118 F.3d at 1422.

[6]In accord with *County of Sacramento v. Lewis*, No. 96-1337, 1998 WL 259980, at *4 n.5 (U.S. May 26, 1998), this court first determines whether Ms. Baptiste has alleged a deprivation of a constitutional right. Only after determining that Ms. Baptiste has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue. *See id.*

established constitutional right and the defendant's conduct which violated the right with specificity . . . ." *Romero*, 45 F.3d at 1475 (citations omitted).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Albright*, 51 F.3d at 1535 (quoting *Anderson*). Plaintiff is not required to show that the very conduct in question has previously been held unlawful. *See Anderson*, 483 U.S. at 640; *Albright*, 51 F.3d at 1535. She is, however, required to demonstrate the unlawfulness was "apparent" in light of established law. *See Anderson*, 483 U.S. at 640; *Albright*, 51 F.3d at 1535. Generally, this requires that the plaintiff demonstrate a "substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990); *see also Romero*, 45 F.3d at 1475. Unless the plaintiff demonstrates both that the defendant's conduct violated a federal right and the right was clearly established, the defendant must be granted qualified immunity. *See Albright*, 51 F.3d at 1535.

In this case, Ms. Baptiste alleges Officers Hernholm and Martin violated her Fourth Amendment right to be free from unreasonable search and seizure by both detaining her and conducting the pat-down search. Because both parties

agree that Ms. Baptiste was under arrest at the time she was searched, the district

court focused its inquiry on the constitutional propriety of the warrantless arrest

and treated the pat-down search as a search incident to that arrest. Neither party

appears to challenge this analytical paradigm used by the district court. This

court therefore considers whether the conceded warrantless arrest violated Ms.

Baptiste's clearly established rights under the Fourth Amendment.[7]

The propriety of a warrantless arrest is analyzed under the probable cause

standard. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Romero*, 45 F.3d at 1476. A

warrantless arrest is permissible when an officer has probable cause to believe

that the arrestee committed a crime. *See Romero*, 45 F.3d at 1476. "'Probable

cause exists if facts and circumstances within the arresting officer's knowledge

and of which he or she has *reasonably trustworthy* information are sufficient to

lead a prudent person to believe that the arrestee has committed or is committing

an offense.'" *Id.* (emphasis added) (quoting *Jones v. City & County of Denver,

Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988)); *see also Beck*, 379 U.S. at 91. In

the qualified immunity context, this court has held:

> When a warrantless arrest is the subject of a § 1983 action, the
> defendant arresting officer is "entitled to immunity if a reasonable
> officer could have believed that probable cause existed to arrest" the
> plaintiff. "Even law enforcement officials who reasonably but

---

[7]Because this court concludes there was not probable cause to support the
warrantless arrest, the pat-down search incident to arrest was also improper.

mistakenly conclude that probable cause is present are entitled to immunity."

*Romero*, 45 F.3d at 1476 (citations omitted) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991) (internal quotation omitted)). The primary question therefore is whether, based on the facts and circumstances known to Officers Hernholm and Martin, a reasonable officer could have believed there was probable cause to arrest Ms. Baptiste.

## 1. Reliance upon security guards

Officers Hernholm and Martin argue that the statements made by store security guards were sufficient to establish probable cause. In support of this proposition, they rely on the Seventh Circuit's decision in *Gramenos v. Jewel Cos.*, 797 F.2d 432 (7th Cir. 1986). In *Gramenos*, the Seventh Circuit held that when an officer receives information about an alleged offense from a witness "'who it seems reasonable to believe is telling the truth,'" the officer has probable cause. *Id*. at 439 (quoting *Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968)). The *Gramenos* court upheld the district court's grant of qualified immunity to police officers who arrested an individual based on the statement of a store guard despite the plaintiff's contention that the officers failed to interview additional witnesses. *See id*. at 437-42. The court noted that police have "reasonable grounds" to believe store security guards because it is unlikely such a guard would be inappropriately motivated. *See id*. at 439.

There is, however, an important factual distinction between *Gramenos* and the present case. In *Gramenos*, the officers did not have the benefit of a videotape which they knew depicted the very conduct alleged by the guard to be criminal. The police officers in *Gramenos* instead made their probable cause assessment based on the observations of the security guard and the plaintiff's denial of the allegations. *See id*. at 438. The court held those facts provided the officers "reasonable grounds" to believe the security guard. *See id*. at 439. In contrast, Officer Hernholm and Martin had the benefit of observing the very conduct which they knew served as the basis for the guards' allegations. Everything the guards observed was recorded for the officers to review. Reliance on the security guards' account of their observations was unnecessary. Moreover, unlike the defendant in *Gramenos*, who simply denied the alleged conduct, Ms. Baptiste explained her actions to the officers and produced the rings and receipts for the rings. *See id*. at 437.

The question, therefore, is whether "reasonable grounds" existed to believe the shoplifting allegations made by store security guards in light of the conduct recorded on the videotape; Ms. Baptiste's explanation; her production of receipts for two rings; and the search of her bag, purse, and pockets, which revealed no stolen merchandise. This court holds that this information, known to Officer

-10-

Hernholm, did not provide reasonable grounds to believe the security guards' allegations of theft and did not provide probable cause to arrest Ms. Baptiste.

The videotape is insufficient as a matter of law to establish probable cause. Contrary to the officers' assertions that the videotape is ambiguous, it does not suggest theft nor does it contradict Ms. Baptiste's explanation of the events. Specifically, the videotape shows Ms. Baptiste removing a ring from her shopping bag, placing it on her finger, and comparing it with rings from J.C. Penney. When she is finished comparing rings, the tape shows her wrapping one ring in tissue paper, placing it back into the shopping bag, and looking for a sales person. Nothing on the videotape reasonably suggests that Ms. Baptiste was shoplifting, especially in light of the search of Ms. Baptiste's belongings and her producing the Mervyn's ring, wrapped in tissue paper, along with its receipt, as well as the ring she purchased at J.C. Penney, along with its receipt.

The security guards' allegations were based solely on the conduct of Ms. Baptiste which was memorialized in its entirety on the videotape. The officers viewed the very same conduct on the videotape, which this court has concluded failed to establish probable cause. It was therefore not reasonable for the officers to rely on the security guards' allegations. Officers may not rely solely on a security guard's allegations when the officers have before them an exact replication of all the information on which the guard's allegations are based. *Cf.*

*BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest."). In such a situation, the guard's allegations added nothing to what the officers had the opportunity to view with their own eyes.[8]

## 2. Clearly established right

Officers Hernholm and Martin also argue that Ms. Baptiste has failed to meet her burden of demonstrating that the unlawfulness of their acts was apparent in light of pre-existing case law. Specifically, they argue that case law allows officers to rely on a security guard's allegations to establish probable cause. They note Ms. Baptiste has failed to cite any case law which holds that either an

---

[8]Officers Hernholm and Martin contend that because a police officer investigating a call may generally rely on observations made by a security guard absent other evidence, there is a disincentive to view a videotape or otherwise investigate. Absent exceptional circumstances, however, when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime, the officer must view the videotape so as to avoid improperly delegating the officer's duty to determine probable cause. *Cf. Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19-20 (4th Cir. 1988) (upholding jury verdict that officer lacked probable cause for arrest because information upon which officer relied was speculative and officer failed to investigate potentially exculpatory leads such as prints from bank surveillance film). While officers are not required to conduct full investigations before making an arrest, an officer may not ignore a videotape which records the alleged criminal acts. *Cf. Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995) (noting that the probable cause standard requires officers to "investigate basic evidence"); *Sevigny v. Dicksey*, 846 F.2d 953, 957-58 (4th Cir. 1988) (holding officer who failed to "avail himself of readily available information" which would have confirmed plaintiff's explanation of events was not entitled to qualified immunity for unlawful arrest).

inconclusive videotape or an explanation of innocence negates a finding of probable cause.[9] They conclude that any holding by this court which limits the ability of an officer to rely on a security guard's allegations when a videotape has been viewed constitutes "new" law. This argument, however, misreads the clearly established law.

In *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *cert. granted and vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986), the Tenth Circuit considered whether an officer may rely solely on the statements of a witness, without conducting an independent investigation, to establish probable cause for a warrantless arrest. In *Lusby*, one of the plaintiffs purchased a pair of sunglasses at a T.G. & Y. Store. *See id.* at 1427. That plaintiff then decided to return to buy hair spray. *See id.* While still carrying the sunglasses,

---

[9]"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992); *see also Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Medina*). A plaintiff, however, need not cite a factually identical case to demonstrate the law was clearly established. *See Clanton*, 129 F.3d at 1156. Some level of generality is appropriate. *See id.* A plaintiff may therefore carry the burden of demonstrating a right is clearly established by citing cases that have a sufficient degree of factual correspondence to enable a reasonable officer to know that the officer's acts violated the plaintiff's constitutional or statutory rights. *See id.*

the plaintiff entered the checkout line a second time and paid for the hair spray. *See id.* An assistant store manager, who observed the plaintiff go through the checkout line this second time, noted that the plaintiff did not pay for the sunglasses. He therefore contacted an off-duty police officer, employed by the store as a security guard, to investigate. *See id.* at 1427-28. When the plaintiff was unable to produce a receipt for the sunglasses, the off-duty police officer, acting as a security guard, placed him under arrest. *See id.* at 1428. The guard did not question the cashier, despite the plaintiff's claim that he had purchased the sunglasses moments before. *See id.* at 1428, 1432. Two Lawton police officers subsequently arrived at the store and took the plaintiff into custody without investigating the alleged shoplifting. *See id.* at 1428, 1430, 1432. The officers did not interview any witnesses, nor did they inquire into whether there was probable cause to arrest. *See id.* at 1430, 1432. The jury found the off-duty police officer/security guard and the City of Lawton liable for violating the plaintiff's rights under § 1983.[10] *See id.* at 1427.

---

[10]*Lusby* involved three plaintiffs. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1427 (10th Cir. 1984), *cert. granted and vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986). After the security guard accused one of the plaintiffs of shoplifting, a struggle ensued between that plaintiff and the guard, who was attempting to escort the plaintiff to the back room. *See id.* at 1428. The remaining two plaintiffs came to the aid of their brother during the struggle. *See id.* A second altercation occurred after the two police officers took all three plaintiffs into custody. *See id.*

On appeal the off-duty police officer, acting as a security guard, argued *inter alia* that he was entitled to qualified immunity for his acts. *See id*. at 1427, 1432. This court held that even if the guard was acting as a police officer, he was not entitled to qualified immunity because he failed to check with the cashier to see if the plaintiff had paid for the sunglasses. *See id*. at 1432. Inherent in this court's holding was a determination that a reasonable officer would have known such failure to investigate violated the constitutional or statutory rights of the plaintiff. *See id*.

This court also affirmed judgment against the City of Lawton because the record contained evidence that the city had a policy of impermissibly delegating the nondelegable duty of determining probable cause. *See id.* at 1432. This court noted that "[t]he Lawton police department did not routinely investigate merchants' allegations of shoplifting before arresting suspects that the merchant designated," and that there was "a policy of not conducting any independent investigation before taking a person into custody who has been made the subject of a citizen's arrest." *Id*. The court further noted that the two officers who took the plaintiff into custody, based solely on the allegations of the guard, were acting in accord with the city's unlawful policy. *See id*.

While the context of *Lusby* differs from the case currently before the court, its message is unequivocal: police officers may not ignore easily accessible

-15-

evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation. *See id.* Here, Officers Hernholm and Martin did conduct some investigation by viewing the videotape and questioning Ms. Baptiste. They argue, however, that they should be allowed to rely on the statement of the guards for probable cause to arrest. Because the officers knew that the allegations of the guards were based on observations of conduct captured and preserved on an available videotape, to credit this argument would allow a wholesale delegation of police officers' duty to investigate and make an independent probable cause determination. Equally important in the context of qualified immunity, the argument conflicts with *Lusby*, established Tenth Circuit law.

Furthermore, all parties agree that the standard for evaluating probable cause is whether the officer has "reasonably trustworthy" information sufficient to lead a prudent person to believe that the person arrested has committed the offense. In determining whether an officer has sufficient reasonably trustworthy information to constitute probable cause, clearly established case law requires officers to look at the "totality of the circumstances." *See United States v. Morgan*, 936 F.2d 1561, 1569 (10th Cir. 1991); *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *BeVier*, 806 F.2d at 126. While officers may weigh the credibility of witnesses in

making a probable cause determination, they may not ignore *available and undisputed* facts. *Cf. Romero*, 45 F.3d at 1476-77 & n.2 (noting that while officers do not have duty to interview alleged alibi witness once probable cause is established, the probable cause standard "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention"); *Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19-20 (4th Cir. 1989) (sustaining jury verdict that police officer lacked probable cause to arrest plaintiff because officer relied on speculative information while ignoring readily available exculpatory evidence); *BeVier*, 806 F.2d at 128 (stating that "police officer may not close her or his eyes to facts" and that "[r]easonable avenues of investigation must be pursued").

In this case, it is undisputed that Officer Hernholm viewed the videotape. In making the probable cause determination based on the totality of the circumstances, the videotape therefore must be considered independent of any interpretation by the security guards. The videotape, as discussed above, does not suggest criminal conduct, but is instead consistent with Ms. Baptiste's version of events. The allegations of the security guards, based solely on their interpretation of events exactly recorded on the videotape, add nothing to the totality of the

-17-

circumstances.[11] The other information known to the officers, including the search of Ms. Baptiste's belongings which revealed no stolen merchandise, her production of the receipts for two rings, and her explanation of the events, tended to negate probable cause.[12] Based on the totality of the circumstances, a reasonable officer therefore would not have believed there was probable cause to arrest Ms. Baptiste. The district court did not err in denying the officers qualified immunity.

### 3. Reliance on fellow officer

Officer Martin's status is quite distinct from Officer Hernholm's status. She arrived at the scene after Ms. Baptiste had been detained by Officer Hernholm and at his request for a female officer to conduct a pat-down search. Consequently, even if qualified immunity does not apply to the seminal event,

[11]Additionally, the allegations of the security guards, based entirely on conduct recorded on the videotape, cannot be considered "reasonably trustworthy" information because they were not substantiated by the videotape and other evidence known to the officers.

[12]As for Ms. Baptiste's explanation of innocence, Officers Hernholm and Martin argue that clearly established law neither requires an officer to lend credence to a suspect's explanation of innocence nor requires the officer to forgo arrest until the incident can be more fully investigated. *See e.g., Romero*, 45 F.3d at 1476-78; *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Even if Ms. Baptiste's explanation is disregarded, however, the officers lacked probable cause to arrest because the videotape fails to suggest criminal conduct and the remaining evidence, including the receipts Ms. Baptiste produced, negates probable cause. While it is therefore unnecessary to consider the weight which should be given Ms. Baptiste's explanation, it only further suggests innocent conduct.

Officer Hernholm's arrest and detention of Ms. Baptiste, Officer Martin is independently entitled to qualified immunity if her pat-down search did not violate Ms. Baptiste's right to be free from a search absent a lawful arrest.[13]

Officer Martin contends she is entitled to qualified immunity because she had the right to rely on Officer Hernholm's determination of probable cause. Police work often requires officers to rely on the observations, statements, and conclusions of their fellow officers. An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability. *Cf. United States v. Hensley*, 469 U.S. 221, 230-33 (1985) (holding officers are entitled to rely on flyer issued by another police department for reasonable suspicion to conduct investigatory stop); *Whiteley v. Warden*, 401 U.S. 560, 568 (1971) ("[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause."); *Albright*, 51 F.3d at 1536 ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest." (citation omitted)).

---

[13]As previously indicated, the parties limited their analysis of the pat-down search as one incident to the arrest.

Instead, a police officer who acts "in reliance on what proves to be the flawed conclusions of a fellow police officer" may nonetheless be entitled to qualified immunity as long as the officer's reliance was "objectively reasonable." *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997).

An obvious antecedent to Officer Martin's contentions is that she did in fact rely on Officer Hernholm's probable cause determination. The district court, however, determined that Officer Martin "made an independent evaluation of probable cause before searching [Ms. Baptiste]" and therefore did not rely on Officer Hernholm's probable cause determination.[14] While the district court's resolution of this factual question was inappropriate,[15] it implicitly determined there was a genuine issue of material fact whether Officer Martin actually relied on Officer Hernholm's probable cause determination. This court does not have jurisdiction to review the district court's determination that there are material issues of disputed fact. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995).

---

[14]The district court's resolution of this issue was no doubt based on Officer Martin's unequivocal "yes" in response to the following question propounded during her deposition: "So based on the video, you decided that you had probable cause, independent of Officer Hernholm, to do a pat-down?"

[15]There was no occasion for the district court to resolve this factual question inasmuch as plaintiff did not file a motion for summary judgment. Officer Martin consequently did not have an opportunity to factually address the antecedent question of actual reliance or even consider the possibility of partial reliance on Officer Hernholm's probable cause determination.

Whether Officer Martin relied on Officer Hernholm is a factual issue to be resolved at trial.

## CONCLUSION

The denial of Officer Hernholm's and Officer Martin's motion for summary judgment is **AFFIRMED** and the matter is remanded for further proceedings consistent with this opinion.