**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID GARCIA,

        Plaintiff - Appellee,

v.

ESCALANTE, Bernalillo County
Sergeant; R. GARCIA, Bernalillo
County Sheriff's Officer,

        Defendants - Appellants.

No. 15-2058
(D.C. No. 1:12-CV-00265-MV-KBM)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.

Plaintiff-Appellee David Garcia ("Plaintiff") filed this action under 42

U.S.C. § 1983, claiming that Defendants-Appellants Sergeant Escalante and

Sheriff's Officer R. Garcia (collectively, "Defendants"), together with defendant

Lieutenant McCauley,[1] violated his federal constitutional rights by arresting and

---

    [*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

    [1]     Plaintiff stipulated below to Lieutenant McCauley's dismissal from the case.

prosecuting him without probable cause.[2]  Defendants moved for summary

judgment, arguing that they are entitled to qualified immunity.  The district court

denied their motion, and Defendants appealed.  We now reverse, concluding that

Plaintiff has failed to demonstrate that Defendants' conduct violated clearly

established law.

# I

On March 18, 2009, Plaintiff and his mother walked into the Bernalillo

County Second Judicial District Courthouse, where Officer Garcia was working

(alongside other officers) as a security guard.  Officer Garcia observed that

Plaintiff had one or more metal vials attached to his key chain; when Officer

Garcia looked inside the vials, he observed fourteen pills.  Officer Garcia

recognized some of the pills as hydrocodone, which—the parties agree—is a

controlled substance under the New Mexico Controlled Substances Act, New

Mexico Statutes Annotated section 30-31-1 *et seq.*  The Act prohibits the

possession of such substances "unless the substance was obtained pursuant to a

valid prescription."  § 30-31-23(A).

---

[2]      Both the Plaintiff-Appellee, David Garcia, and one of the
Defendants-Appellants, Officer R. Garcia, have the same last name—that is,
"Garcia."  To avoid any confusion, when referring to the two individuals, David
Garcia will be referred to only as "Plaintiff," and R. Garcia will be identified as
"Officer Garcia."

Officer Garcia expressed concern about the pills in Plaintiff's vial; in response, his mother retrieved Plaintiff's prescription records from her vehicle. Plaintiff then was able to provide the security officers with records for all of the pills in his possession.[3] However, Officer Garcia did not believe that the prescription for hydrocodone was "valid" for purposes of section 30-31-23(A) because it was dated January or February 2008,[4] which was thirteen to fourteen

---

[3] Defendants dispute whether Plaintiff provided them with any prescription records for hydrocodone; however, they recognize that, at this summary-judgment stage, they must accept Plaintiff's version of the facts, insofar as that version has evidentiary support in the record. *See, e.g.*, *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Accordingly, they have conceded this fact for purposes of judicial consideration of the merits of their motion for summary judgment.

[4] Plaintiff contends on appeal that the date of the prescription handed to officers is "unknown." Aplee.'s Br. at 22 (citing Aplt.'s App. at 104 (Mot. to Compel Dep. of Party, Resp. to Reqs. for Produc., & Att'y's Fees)). It is true that for purposes of this interlocutory appeal our jurisdiction is limited to purely legal questions and thus we must accept the plaintiff's allegations and view the facts in the light most favorable to him. *See infra* Section II.A. However, it is equally true that because this appeal arises after denial of summary judgment, "the plaintiff's version of the facts must find support in the record." *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016).

Here, it is unclear what record foundation the plaintiff has for the assertion that the date of the prescription provided to the officers is unknown. Assuming that Plaintiff intends to refer us to page 104 of his deposition testimony, rather than page 104 of the appendix on appeal—which is inapt—it does not establish that the date on the prescription provided to the Defendants is unknown, merely that Plaintiff handed them *some* prescription. *See* Aplt.'s App. at 81 (Dep. of Pl. David Garcia, dated Nov. 21, 2012). Plaintiff has never offered evidence indicating that any hydrocodone prescription provided to Officer Garcia was from a different temporal period. But the record evidence—and this evidence was

(continued...)

3

months prior to the date of his encounter with Plaintiff (i.e., March 18, 2009).

Officer Garcia and his supervisor, Sergeant Escalante, arrested Plaintiff for being in possession of a controlled substance without a valid prescription. Officer Garcia later filed a criminal charge against Plaintiff, but it was dismissed within a few weeks of being filed.

Subsequently, Plaintiff filed the present case under 42 U.S.C. § 1983, asserting that his Fourth Amendment rights were violated (1) by an unreasonable seizure and arrest that Officer Garcia and Sergeant Escalante had effected, and (2) by Officer Garcia's prosecution of him without probable cause.[5] Defendants moved for summary judgment and asserted qualified immunity. Resolving the

---

[4](...continued)
produced by Plaintiff himself—does show hydrocodone prescriptions from January and February 2008. *See id.* at 47 (Resp. to Defs.' Mot. to Dismiss, filed Mar. 20, 2012); *id.* at 102 (Defs.' Am. Mot. for Summ. J., filed Jan. 22, 2013). Therefore, for purposes of resolution of this appeal, because plaintiff's allegation finds no support in the record, we accept that any hydrocodone prescription that Plaintiff provided to Officer Garcia was from either January or February 2008.

[5]        Plaintiff does not clearly identify the constitutional source of his "prosecution without probable cause" claim. However, because the conduct that Plaintiff challenges occurred prior to any trial, the Fourth Amendment is the proper constitutional basis for any such wrongful prosecution claim that he might assert under § 1983. *See, e.g.*, *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) ("We have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures' [rather than the Fourteenth Amendment's substantive due process guarantees]." (quoting *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996))).

4

merits of the case with the parties' consent, a magistrate judge found that

(1) "[b]ecause Plaintiff failed to come forward with facts showing that

Defendant[s] lacked probable cause to seize Plaintiff, Defendants are entitled to

qualified immunity on the unlawful seizure claim," Aplt.'s App. at 184 (Mem. &

Order, filed Apr. 1, 2013); and (2) because "Defendants had probable cause for

the arrest," the malicious-prosecution claim "must be dismissed," *id.* at 185.  The

magistrate judge thus found that Defendants were entitled to qualified immunity

as to all claims and dismissed the case.

On appeal, in an unpublished decision, a panel of our court reversed,

concluding that "Plaintiff submitted sufficient evidence to support his claim that

his arrest was without probable cause."  *Garcia v. Escalante (Garcia I)*, 551 F.

App'x 463, 467 (10th Cir. 2014).  The court noted that "[w]hen a [§ 1983]

defendant asserts qualified immunity at summary judgment, the burden shifts to

the plaintiff to show that: (1) the defendant violated a constitutional right and (2)

the constitutional right was clearly established."  *Id.* at 465 (quoting *Courtney v.*

*Okla. ex. rel, Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013)).

Analyzing the first prong of the qualified-immunity test, the panel explained that:

> Defendants argue that even if Plaintiff's mother had given
> Officer Garcia the January or February 2008 prescriptions for
> hydrocodone, they would not have been valid prescriptions.
> Defendants rely on 21 U.S.C. § 829(b), which states that
> prescriptions for a controlled drug such as hydrocodone "may not

5

be filled or refilled more than six months after the date thereof." But Plaintiff was not trying to fill a prescription. He was simply showing that his drugs had been obtained with a prescription. The statute cited by Defendants does not require the patient to consume all the medication within six months of the prescription date. In our view, Plaintiff submitted sufficient evidence to support his claim that his arrest was without probable cause.

*Id.* at 466–67. The panel thus reasoned that Plaintiff had set forth sufficient evidence at the summary-judgment phase to show that Defendants had violated his constitutional rights by arresting and prosecuting him without probable cause. It, however, declined to decide if those rights were clearly established at the time of the events at issue: "Defendants also argue that they are entitled to qualified immunity because the applicable law was not clearly established at the time of Plaintiff's arrest and prosecution. We leave that question for the district court in the first instance." *Id.* at 467.

On remand, Defendants filed a renewed motion for summary judgment, asserting qualified immunity and arguing that "there is no clearly established law in any jurisdiction, that probable cause for arrest for possession of a controlled substance is vitiated any time the person can produce a long outdated prescription for same." Aplt.'s App. at 287–88 (Defs.' Renewed Mot. Summ. J. & Qualified Immunity & Mem. in Supp, filed Apr. 17, 2014). The district court denied Defendants' motion, and they now appeal. Exercising our jurisdiction under 28 U.S.C. § 1291, we reverse.

6

## II

### A

At the outset, we address Plaintiff's contention that we lack jurisdiction. Plaintiff advances two arguments; both lack merit. First, Plaintiff argues that "both judicial and attorney resources should be conserved, rather than establish a precedent by which a denial of qualified immunity can be indefinitely appealed, for an unspecified number of times, and under alternating factual scenarios." Aplee.'s Br. at 23. Plaintiff's brief, however, cites no legal support for this conclusory proposition, and we find it meritless.

And, second, Plaintiff asserts that the district court's order is not immediately appealable because the case involves a "significant factual dispute that must be resolved by a jury." *Id.* at 24. His brief points out that the earlier decision from a panel of this court concluded that there was a factual dispute concerning whether Plaintiff had provided Defendants with any prescription for hydrocodone. *Id.* at 25 (citing *Garcia I*, 551 F. App'x at 467). Thus, Plaintiff argues, "because of the significant factual dispute best resolved by a jury at trial," we should decline to exercise jurisdiction over Defendants' appeal.[6] *Id.*

---

[6] Orders denying summary judgment are generally "not appealable final orders for purposes of 28 U.S.C. § 1291." *E.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 409 (10th Cir. 2014). "The denial of qualified immunity to a public official, however, is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Id.* (quoting *Fancher v.*

(continued...)

7

However, it is well settled, in the context of qualified-immunity interlocutory appeals, that "our jurisdiction . . . 'is clear when the defendant does not dispute the facts alleged by the plaintiff" and, more specifically, is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) (quoting *Farmer v. Perrill*, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002)).  Here, Defendants have done just that.  *See* Aplt.'s Opening Br. at 4 ("Defendants dispute that Plaintiff provided them with a prescription record for hydrocodone, but for purposes of their Motion for Summary [Judgment] only, they concede this fact."); *accord, e.g.*, Aplt.'s App. at 361 (Defs.' Resp. in Opp'n to  Pls.' Mot. to Defer Ruling on or Den. Defs.' Mot. for Summ. J., filed May 6, 2014).  Accordingly, we have jurisdiction to "review[] the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law."  *Cox*, 800 F.3d at 1242 (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001)).

**B**

Defendants moved for summary judgment "on the sole ground that they are entitled to qualified immunity . . . because the law was not clearly established at the time

---

[6](...continued)
*Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013)); *see Fogarty v. Gallegos*, 523 F.3d 1147, 1153–54 (10th Cir. 2008) ("Under this limited jurisdiction, we may review the district court's abstract legal conclusions, such as whether the law was clearly established at the time of the alleged infraction.").

8

of Plaintiff's arrest and prosecution such that a reasonable officer in their position would have known that they were violating Plaintiff's constitutional rights." Aplt.'s App. at 422–23. The district court rejected this contention, and Defendants allege on appeal that the court erred.

"When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the right was clearly established." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015); *Cox*, 800 F.3d at 1245 ("[B]y asserting the qualified-immunity defense, Sheriff Glanz triggered a well-settled twofold burden that Ms. Cox was compelled to shoulder: not only did she need to rebut the Sheriff's no-constitutional-violation arguments, but she also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law.").

Ordinarily, "[i]n this circuit, to show that a right is clearly established, the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Callahan*, 806 F.3d at 1027 (quoting *Gomez*, 745 F.3d at 427). We have had occasion recently to clarify the contours of this standard:

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional

9

question 'beyond debate.'" "The dispositive question is 'whether the violative nature of the *particular conduct* is clearly established.'" In the Fourth Amendment context, "the result depends very much on the facts of each case," and the precedents must "squarely govern" the present case. "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations omitted) (quoting

*Mullenix v. Luna*, 577 U.S. ----, 136 S. Ct. 305, 308, 309 (2015) (per curiam)); *see also*

*Callahan*, 806 F.3d at 1027 ("The law is also clearly established if the conduct is so

obviously improper that any reasonable officer would know it was illegal.").[7]

The Supreme Court "[has] repeatedly told courts . . . not to define clearly

established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742

---

[7]     It is not uncommon in cases like this one—where (as explicated *infra*) law enforcement officer defendants base their assertion of probable cause for an arrest or prosecution on a state statute—for us to examine state caselaw, notably, that of the state's appellate courts and, more specifically, the "ultimate authority," the supreme court, because the "precise scope" of the federal constitutional rights at issue (here, rights protected by the Fourth Amendment) may "uniquely depend[] on the contours of a state's substantive criminal law." *Kaufman v. Higgs*, 697 F.3d 1297, 1300–01 (10th Cir. 2012); *see, e.g.*, *Holmes*, 830 F.3d at 1145–49 (analyzing the import of a New Mexico Court of Appeals's interpretation of a state criminal statute); *Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015) (examining "the state's common law" in discerning the content of the state criminal statute at issue). In other words, state caselaw may assist us in understanding exactly what conduct the statute at issue proscribes; that, in turn, may help us in evaluating whether law enforcement defendants had probable cause to believe that the statute had been violated. However, the parties' arguments in this case do not turn on state caselaw but, rather, on more general Fourth Amendment principles that federal caselaw establishes. Therefore, state caselaw is not a significant input into our overall analysis of whether it was clearly established in March 2009 that Defendants lacked probable cause to arrest Plaintiff for possession of a controlled substance without a valid prescription.

(2011).  In *Mullenix*, the Court emphasized that the clearly-established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  And, as we noted in *Aldaba*, the Court has underscored that "[s]uch specificity is especially important in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *limited on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *accord Aldaba*, 844 F.3d at 872. Indeed, in this context, the Court has recently faulted the Tenth Circuit for "fail[ing] to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."  *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 552 (2017) (per curiam).  Notably, *White* stated that our acknowledgment that "th[e] case presents a unique set of facts and circumstances," *id.* (quoting *Pauly v. White*, 814 F.3d 1060, 1077 (10th Cir. 2016)), "*alone* should have been an important indication to the [panel] majority that [the officer's] conduct did not violate a 'clearly established' right," *id.* (emphasis added).

Here, both of the claims at issue—for violations of Plaintiff's Fourth Amendment rights to be free from (1) arrest without probable cause, and (2) malicious prosecution—turn on whether Defendants had probable cause.  *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) ("A police officer may arrest a person without a warrant

11

if he has probable cause to believe that person committed a crime."); *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (to succeed on a malicious prosecution claim, a plaintiff must show that "no probable cause supported the original arrest, continued confinement, or prosecution"). Because *Garcia I* concluded that "Plaintiff submitted sufficient evidence to support his claim that his arrest was without probable cause," 551 F. App'x at 467, as Defendants recognize, the only remaining issue in the qualified-immunity analysis is whether, in March 2009, Defendants lacked probable cause under clearly established law to arrest and prosecute Plaintiff, *see Callahan*, 806 F.3d at 1027; *see also Quinn*, 780 F.3d at 1007 (qualified immunity analysis turned on "whether extant clearly established law [at the time of the events at issue] would have placed a reasonable, similarly situated police officer on notice that *no* probable cause existed").

"As a practical matter, we implement this [clearly-established-law] standard by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)). "In other words, in the § 1983 qualified-immunity context, an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses 'arguable probable cause.'" *Id.* at 1140 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)).

12

Thus, we are tasked with determining whether the "facts and circumstances within the arresting officer[s'] knowledge and of which [they] ha[d] reasonably trustworthy information" were *arguably* "sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* at 1138 (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)). We make this determination based on "the totality of the circumstances [facing the officers,] taking into account both inculpatory as well as exculpatory evidence." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008).

As the basis for their assertion of arguable probable cause, Defendants invoke New Mexico Statutes Annotated section 30-31-23(A), under which "[i]t is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription."[8] The parties do not dispute that the hydrocodone

---

[8]     In addition, the parties and the district court both spent some time discussing the relevance here of 21 U.S.C. § 829(b), which provides that prescriptions for certain drugs, including hydrocodone, "may not be filled or refilled more than six months after the date thereof or be refilled more than five times after the date of the prescription unless renewed by the practitioner." Defendants argue that, in making their probable cause determination, they "relied on their knowledge of the federal statute governing Plaintiff's Hydrocodone and other controlled substances, 21 U.S.C. § 829(b), which indicates that a prescription more than six months old is not to be considered a 'valid' prescription." Aplts.' Opening Br. at 25. However, we rejected this line of argument in *Garcia I*, *see* 551 F. App'x at 466–67 ("Plaintiff was not trying to fill a prescription. He was simply showing that his drugs had been obtained with a prescription. The statute cited by Defendants does not require the patient to consume all the medication within six months of the prescription date."), and

(continued...)

13

Plaintiff had in his possession is a controlled substance under the statute; nor do they

dispute (at least for purposes of summary judgment) that Plaintiff provided Defendants

with a prescription for the drug. They do, however, vigorously contest whether

Defendants had arguable probable cause to believe that Plaintiff was possessing

hydrocodone in violation of section 30-31-23(A), given that he presented to Defendants a

hydrocodone prescription, albeit one dated thirteen or fourteen months prior.

Under the legal standards outlined above, to demonstrate that Defendants lacked

arguable probable cause for his arrest and prosecution, Plaintiff must present controlling

authority that "*squarely governs* the case here," *Mullenix*, 136 S. Ct. at 309 (quoting

*Brosseau*, 543 U.S. at 201); *accord Aldaba*, 844 F.3d at 877, and that would have put

"beyond debate," *al-Kidd*, 563 U.S. at 741; *accord White*, 137 S. Ct. at 551, the question

of whether Plaintiff's presentation of a thirteen- or fourteen-month-old hydrocodone

prescription was enough to negate any probable cause Defendants may have had to

---

[8](...continued)
*Garcia I* supplies the binding law of this case, *see Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) ("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal."); *accord Bishop v. Smith*, 760 F.3d 1070, 1082 (10th Cir. 2014). In any event, we conclude that the district court here correctly rejected this contention. *See* Aplt.'s App. at 439–44 (explaining why "no reasonable officer would import a deadline from Section 829(b) in particular to establish under Section 30-31-23(A) the date by which a prescription medication must be consumed after having been filled"). Therefore, in our view, Defendants' argument based on 21 U.S.C. § 829(b) does not merit further examination.

believe Plaintiff was in violation of New Mexico Statutes Annotated section 30-31-23(A). Plaintiff cannot carry this burden.

## C

Simply put, neither controlling precedent from the Supreme Court or our court, nor "the clearly established weight of authority from other courts," *Callahan*, 806 F.3d at 1027 (quoting *Gomez*, 745 F.3d at 427), "squarely governs" the factual circumstances present here, *Brosseau*, 543 U.S. at 201; *accord Mullenix*, 136 S. Ct. at 309, or places the relevant Fourth Amendment probable-cause question "beyond debate," *al-Kidd*, 563 U.S. at 741—*viz.*, there is no controlling caselaw involving sufficiently similar circumstances that would have "apprise[d] every objectively reasonable officer" that he lacked probable cause to arrest and subsequently prosecute Plaintiff, *Aldaba*, 844 F.3d at 877; *see id.* at 879 ("We have found no case presenting a similar situation. We certainly cannot say that every reasonable officer would know that the Fourth Amendment condemned using a Taser to avoid a full-out physical confrontation with a patient whose life depended on immediate treatment. No case renders a Fourth Amendment violation 'beyond debate.'"); *see also White*, 137 S. Ct. at 552 (noting that the Tenth Circuit "failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment").

Accordingly, we would be hard-pressed to conclude that Plaintiff had carried his burden to demonstrate that Defendants violated clearly established law when they

arrested and prosecuted him. *See, e.g.*, *Cox*, 800 F.3d at 1247 ("Significantly, Ms. Cox has not directed our attention to any Supreme Court or Tenth Circuit decision (published or otherwise) that would indicate that this right was clearly established in 2009 . . . . Nor, for that matter, has Ms. Cox attempted to shoulder her burden by showing that 'the clearly established weight of authority from other courts . . . ha[s] found the law to be as [she] maintains.' *On this basis alone*, we could hold that Ms. Cox has not properly laid the groundwork to defeat Sheriff Glanz's assertion of qualified immunity." (second omission in original) (emphasis added) (footnote omitted) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1023 (10th Cir. 2013))); *Quinn*, 780 F.3d at 1007 ("Plaintiffs have not directed us to any clearly established law involving such sting operations or an analogous law-enforcement setting, nor did the district court rely on any such law. This caselaw void is significant and ultimately determinative . . . ."). Indeed, akin to *White*, "this case presents a unique set of facts and circumstances," *White*, 137 S. Ct. at 552 (quoting *Pauly*, 814 F.3d at 1077)—that "alone" should be "an important indication" to us that Defendants' conduct did not run afoul of clearly established law, *id.*

However, Plaintiff—relying on the district court's analysis—insists that "[s]everal [Tenth] Circuit cases place[d] defendants on notice that [they] would violate Plaintiff's constitutional rights" by arresting him.[9] Aplee.'s Br. at 32 (capitalization altered). The

---

[9] Plaintiff also appears to briefly argue that the plain language of the statute itself should have put Defendants on notice that they lacked probable cause for his arrest. While it is true that the "plain terms" of a statute may

(continued...)

16

district court's analysis relied primarily on three cases: *Cortez*, *supra*; *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *cert. granted and vacated on other grounds sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986); and *Baptiste v. J.C. Penney Co.*, 147 F.3d 1259 (10th Cir. 1998). However, we cannot agree that these three cases address factual circumstances sufficiently similar to those at issue here such that Defendants—like "every objectively reasonable officer," *Aldaba*, 844 F.3d at 877, in a similar position—should have been on notice that their acts violated Plaintiff's constitutional rights.

More specifically, the district court held that *Cortez*, *Lusby*, and *Baptiste* "have a sufficient degree of factual correspondence to constitute clearly established law" and,

---

[9](...continued)
provide notice to officers that their conduct violates an individual's constitutional rights, *see Holmes*, 830 F.3d at 1141–42, we cannot agree with the suggestion that the plain language of New Mexico Statutes Annotated section 30-31-23(A) would have had this effect here. The statute provides no definition of what constitutes a "valid prescription" nor does it enumerate objective factors that a reasonable officer might consider in determining whether a particular prescription is "valid." In short, the plain terms of section 30-31-23(A) do not provide the "degree of specificity," *Holmes*, 830 F.3d at 1141 (quoting *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 846 (10th Cir. 2005)), necessary to "apprise every objectively reasonable officer," *Aldaba*, 844 F.3d at 877, of when they should deem a prescription that a suspect possessing controlled substances presents to be "valid." Accordingly, the statute's plain terms would not have provided the Defendants with the requisite degree of notice—*viz.*, notice that would have put the matter "beyond debate"—that their arrest and subsequent prosecution of Plaintiff was lacking in probable cause, and therefore violated his Fourth Amendment rights, when Plaintiff undisputedly possessed hydrocodone and was only able to offer by way of justification a thirteen- or fourteen-month-old prescription for the drug.

17

thus, "a reasonable officer in Defendants' position would have known that to assume that Plaintiff obtained the hydrocodone from a source other than the prescription, simply because the prescription was dated thirteen or fourteen months prior, violated Plaintiff's [constitutional] rights." Aplt.'s App. at 435–36. In the district court's view, Defendants were required to investigate further before arresting Plaintiff; in particular, the court pointed out, Defendants (1) did not interview Plaintiff's mother, who was present at the scene, nor (2) did they "contact the prescribing physician's office to investigate whether the prescription itself was fraudulent, whether the physician actually prescribed the medication to Plaintiff, or whether Defendants' assumption that Plaintiff would have consumed the pills prescribed over a year prior by the time of his arrest [was correct]." *Id.* at 436.

Relying on this discussion in the district court's opinion, Plaintiff argues that Defendants did not conduct a sufficiently thorough investigation before arresting him.[10]

_____

[10] Plaintiff's brief quotes extensively from the district court's analysis to advance its cause, to wit:

> Any object in one's possession can be said to have been unlawfully obtained but arrest is proper only if the facts before an officer give rise to probable cause to support that conclusion. Absent facts giving rise to that probable cause, a reasonable officer would not assume, simply because a certain amount of time has elapsed during which one has possessed the object, that it was unlawfully obtained.

Aplee.'s Br. at 34 (quoting Aplt.'s App. at 430–31). For example, the court explained, "[b]ecause a receipt produced for an item is old . . . [that] would not cause

(continued...)

18

However, our observation in *Aldaba* is equally applicable on these facts to *Cortez*, *Lusby*, and *Baptiste*—*viz.*, "none of those cases remotely involved a situation as here." 844 F.3d at 876. More specifically, none of them even involved an arrest of a suspect for possession of controlled substances, much less a suspect who contemporaneously presented the arresting officers with a prescription—old or otherwise—for the drug at issue. For example, in *Cortez*, law enforcement arrested "the babysitter's husband" at his residence where "the only information which arguably implicated" him in possible child molestation "was a statement attributed to a barely-verbal two year old child that her babysitter's 'boyfriend' had 'hurt her pee pee.'" 478 F.3d at 1116. Finding this law enforcement conduct improper, we stated, "Plainly, whether we view it as a need for more pre-arrest investigation because of insufficient information, or inadequate corroboration, what the officers had fell short of [what was] reasonably trustworthy information indicating that a crime had been committed by [the plaintiff]." *Id.* at 1116–17 (footnote omitted) (citations omitted).

---

[10](...continued)
a reasonable officer to believe that the item possessed is not the item actually purchased on the receipt but rather is contraband unlawfully obtained from some other source." Aplt.'s App. at 431. However, as Defendants point out, "[c]ontrolled [s]ubstances are not just any item, and their possession is regulated by statute." Aplts.' Opening Br. at 8. Moreover, as we indicate herein, there certainly was no controlling caselaw that would have made it unreasonable for Defendants to infer that the hydrocodone that Plaintiff possessed more than a year after his prescription's date was *not* the same hydrocodone dispensed under that prescription.

Further, *Lusby* involved an arrest for shoplifting in a retail store in which we concluded that the officers "adhered to" "an impermissible city policy" of "not routinely investigat[ing] merchants' allegations of shoplifting before arresting suspects that the merchant designated." 749 F.2d at 1432 (noting that even if an off-duty police officer was eligible for qualified immunity "he forfeited it by acting unreasonably when he investigated the alleged shoplifting"); *see id.* at 1434 (noting that "[t]here was sufficient evidence from which the jury could conclude that a reasonable police officer in [the defendants'] position would have known he was violating the [plaintiffs'] constitutional or statutory rights" when, as the plaintiffs alleged, the officers arrested them "without any independent police investigation to ascertain probable cause").

Lastly, in *Baptiste*, another case involving a shoplifting arrest at a retail store, we held that law enforcement "may not ignore *available* and *undisputed* facts." 147 F.3d at 1259. Consequently, we concluded that, where a "videotape . . . does not suggest criminal conduct, but is instead consistent with [the plaintiff's] version of events," "a reasonable officer therefore would not have believed there was probable cause to arrest [the plaintiff]," even though the security guards alleged the plaintiff's involvement in criminal conduct "based solely on their *interpretation* of events exactly recorded on the videotape." *Id.* at 1259–60 (emphasis added).

It is patent that none of the foregoing Tenth Circuit cases presents "a similar situation" to the one at issue here. *Aldaba*, 844 F.3d at 879. Consequently, "[w]e certainly cannot say that every reasonable officer would know that the Fourth

20

Amendment condemned" an arrest of someone in Plaintiff's circumstances for violating New Mexico Statutes Annotated section 30-31-23(A), and "[n]o case renders a Fourth Amendment violation [under these circumstances] 'beyond debate.'" *Id.*[11]

Furthermore, even if those Tenth Circuit cases were sufficiently factually similar to this one (which we have shown they are not), we cannot agree that they would have obliged Defendants, in conducting a reasonable further investigation, to take the two steps the district court suggested. For example, had Defendants interviewed the mother, they would have potentially gained—at most—testimony from the mother concerning whether the hydrocodone was obtained pursuant to the thirteen- or fourteen-month-old prescription. Even assuming that she would have told them that Plaintiff had acquired the pills with that prescription, Defendants would not have been required to refrain from arresting Plaintiff solely based on her statements. *Cf. Romero*, 45 F.3d at 1476 (holding that officers not required to investigate arrestee's alibi witnesses before arresting him); *Munday v. Johnson*, 257 F. App'x 126, 134 (10th Cir. 2007) ("[P]olice officers are not required to [forgo] making an arrest based on facts supporting probable cause simply

---

[11] Plaintiff's brief also cites a number of cases from other circuits that similarly hold that an officer must conduct a basic investigation of readily available evidence before making an arrest. However, similar to the Tenth Circuit cases that the district court and Plaintiff rely on, none of these additional cases are sufficiently on point to have given Defendants the requisite notice that they clearly lacked probable cause for Plaintiff's arrest and prosecution.

because the arrestee offers a different explanation. '[P]robable cause does not require certainty of guilt . . . , but rather only reasonably trustworthy information that would lead a reasonable person to believe an offense was committed.'" (alteration in original) (citations omitted) (quoting *United States v. Patane*, 304 F.3d 1013, 1018 (10th Cir. 2002), *rev'd on other grounds*, 542 U.S. 630 (2004))).

As for the suggestion that Defendants were obliged to contact Plaintiff's physician, such a requirement goes beyond the holdings of *Cortez*, *Lusby*, and *Baptiste*, each of which required officers to interview *readily available* witnesses or otherwise review *readily available* exculpatory evidence. *See Cortez*, 478 F.3d at 1117 ("[W]itnesses were readily available for interviews . . . . Defendants, however, did not . . . interview the girl [who may have been molested by the arrestee], her mother, the nurse, or the doctor . . . . In other words, Defendants conducted no investigation."); *Baptiste*, 147 F.3d at 1259 (holding that officers could not rely on security guards' statements that arrestee had shoplifted where easily accessible video showed their account was inaccurate); *Lusby*, 749 F.2d at 1431 (faulting officer for failing to interview cashier from whom the plaintiff had purchased item that officer believed she had stolen). A rule that would have obliged Defendants to contact Plaintiff's physician, who was neither at the scene nor otherwise involved with the events at the courthouse that day, would represent an expansion of what was required of officers in *Cortez*, *Lusby*, and *Baptiste*. Consequently, that rule could not be clearly established law for Defendants' arrest of Plaintiff.

22

In sum, guided by *Mullenix* and its progeny, we adhere to our view that there is no clearly established law that would have put Defendants—like "every objectively reasonable officer," *Aldaba*, 844 F.3d at 877, in a similar position—on notice in March 2009 that their arrest and prosecution of Plaintiff for possessing hydrocodone without a valid prescription was lacking in probable cause, and therefore violative of the Fourth Amendment, notwithstanding Plaintiff's presentation to them of a thirteen- or fourteen-month-old prescription.  And Plaintiff's cited authority is not to the contrary.

### III

For the reasons discussed above, we conclude that Defendants are entitled to qualified immunity and accordingly **REVERSE** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

23